Jaimee L. Nardiello (JN-3173)
WEISER & ASSOCIATES
215 Lexington Ave., 18th Floor
New York, NY 10016
Tel: (212) 213-3111
Fax: (212) 213-5939
ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x

RAJIV GARG,

                                        07 Civ. 0510 (ADS) (AKT)

             Plaintiff,

      -against-

WINTERTHUR,

             Defendant.
-----------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO WINTERTHUR'S MOTION TO DISMISS

## TABLE OF CONTENTS

COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I
       THIS COURT HAS PERSONAL JURISDICTION
       OVER THE DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          A.    Personal Jurisdiction of Defendant was
                Acquired under 29 U.S.C.A. 1132(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          B.    Defendant was Properly Served . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT II
       THE EASTERN DISTRICT OF NEW YORK
       IS THE PROPER VENUE FOR THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          A.    The Breach Took Place in
                the Eastern District of New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          B.    Defendant is "found" Within
                The Eastern District of New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

<u>**Cases**</u>

**<u>Page</u>**

Ackermann v. Levine
   788 F.2d 830, 840 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

American Medical Ass'n v. United Healthcare Corp.
   2001 WL 863561, at *4 (S.D.N.Y. July 31, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan
   97 F.3d 822, 825 (5th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.
   212 F.3d 1031, 1037 (7th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Bostic v. Ohio River Co.
   517 F.Supp. 627 (S.D.W.Va.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Burda Media, Inc. v. Blumenberg
   417 F.3d 292 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Daly v. Llanes
   1999 U.S. Dist. LEXIS 18399 (S.D.N.Y.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Dittmann v. Dyno Nobel, Inc.
   1998 WL 865603 (N.D.N.Y.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gulf Ins. Co. v. Glasbrenner
   417 F.3d 353 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hetchkop v. George Harms Excavating Corp.
   No. 92 Civ. 2239, 1993 WL 88106 (S.D.N.Y., March 26, 1993) . . . . . . . . . . . . . . . . . . 3

I.L.G.W.U. Retirement Fund v. Meredith Grey, Inc.
   986 F.Supp. 816 (S.D.N.Y.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ingalls Memorial Hospital v. Northeatern Care Ctr., Inc.
   1991 WL 24505 (N.D.Ill. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

International Shoe Co. v. Washington
   326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Keating v. Whitmore Manufacturing Co.
      981 F.Supp. 890 (E.D.Pa.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Keel v. Group Hospitalization Medical Services, Inc.
      695 F.Supp.223 (E.D.Va.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kim v. Dial Services Int'l
      1997 U.S. Dist. LEXIS 66, *11 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Local 8A-28A Welfare and 401(K) Retirement Funds v. Golden Eagles Architectural Metal Cleaning
and Refinishing
      277 F.Supp.2d 291, 294 -295 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 10

Mariash v. Morrill
      496 F.2d 1138, 1143 (2d Cir.1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

McGee v. International Life Ins. Co.
      355 U.S. 220 (U.S. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

 Medical Mutual of Ohio v. deSoto
      245 F.3d 561, 567 (6th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Milliken v. Meyer
      311 U.S. 457 (U.S. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mullane v. Central Hanover Bank & Trust Co.
      339 U.S. 306, 314 (U.S. 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Northrop v. Compania Productora
      51 F.3d 1383, 1389 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Resource Trade Financial v. PMI Alloys
      2002 U.S. Dist. LEXIS 14740 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Seitz v. Board of Trustees of the Pension Plan of the
New York State Teamsters Conference Pension and Retirement Fund
      953 F.Supp. 100, 102 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Stickland v. Trion Group, Inc.
      463 F.Supp.2d 921 (E.D.Wis.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Travelers Health Ass'n v. Virginia
      339 U.S. 643 (U.S. 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Varsic v. United States Dist. Court
        607 F.2d 245, 248 (9th Cir.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

## Statutes

29 U.S.C.A. 1132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 11, 12, 13

Fed. R. Civ. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 12(b)(2), (3), (4), (5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## Additional Resources

http://www.ofj.admin.ch/themen/rechtshilfe/wegl-ziv-e.pdf . . . . . . . . . . . . . . . . . . . . . . . 7

Convention on the Service Abroad of Judicial and
Extrajudicial Documents in Civil or Commercial Matters
        20 U.S.T. 361, TIAS no 6638, Chapter 1, Article 2 (US Ratification, 1969) . . . . . . . . 6, 9

## I. COUNTER-STATEMENT OF THE FACTS

Rajiv Garg was the Head of Global Market Risk Management for Credit Suisse First Boston, working out of the New York City office until he became disabled in 1999. At the time he became disabled, Mr. Garg was a participant in Pension Fund International, which was offered by the defendant, Winterthur to the employees of Credit Suisse First Boston. This insurance plan provided for payment of approximately $112,500.00 per annum to Mr. Garg in the event he became disabled from his employment. During the course of his participation in the Winterthur plan, Mr. Garg developed diabetic retinopathy and related medical conditions which rendered him completely disabled from his employment. Ultimately, Mr. Garg filed for disability benefits from Winterthur, but defendant wrongfully denied his claim and refused to pay him the benefits to which he is entitled.

As such, plaintiff commenced an ERISA action against defendant Winterthur, in the United States District Court for the Southern District of New York in June, 2005. However, after a motion to dismiss by defendant, the court found that the Southern District was the improper venue for plaintiff's claim and did not transfer the case to the Eastern District because a specific request for a transfer was not made.

Thus, this action was commenced in the Eastern District of New York on February 7, 2007, by filing a summons and complaint. On March 12, 2007, these documents were served on the defendant, in conformity with the provisions of the Hague Convention, by the Swiss Department of Justice. On April 26, 2007, a set of documents translated into German were served upon defendant by the Swiss Department

1

of Justice. On April 3, 2007, defendant filed the instant motion, which seeks to dismiss the complaint for lack of personal jurisdiction, improper venue, and insufficient service of process. Annexed hereto as exhibit "A," please find the initial summons, complaint and affidavit of service, and as exhibit "B" the German translation of the summons and complaint and the affidavit of service for same. The defendant has not yet interposed an Answer.

## II. PRELIMINARY STATEMENT

The defendant's motion should be dismissed in its entirety, as it erroneously construes the law governing personal jurisdiction, venue, and service of process, as well as the facts governing the determination of these issues. This suit is based on the defendant's failure to pay the benefits to which Mr. Garg is entitled under the insurance policy the defendant sold to Mr. Garg, a New York employee of Credit Suisse First Boston. This agreement was administered to Mr. Garg while he was a resident of Nassau County, and administered through regular contact with Mr. Garg in Nassau County. Unquestionably, this Court is the proper venue and has the capacity to exercise personal jurisdiction.

Furthermore, plaintiff has effectuated proper service over defendant. The appropriate forum for challenging compliance with the Hague Convention is the Swiss Central Authority, which has determined that plaintiff's initial service was proper. Although plaintiff re-served defendant with a summons and complaint translated into German, it was not necessary to do so. When the Swiss government served process on the defendant, it was given the opportunity to request formal service of a German translation of the complaint. The defendant waived that opportunity, and elected the "simple service" method for service (in which an English only complaint is sufficient). After allowing an appropriate time for the

defendant to make an objection regarding Hague Convention compliance, the Swiss government returned

a receipt of service and affirmed that Summons and Complaint were properly served in conformity with

all international and Swiss requirements.

## POINT I.
## THIS COURT HAS PERSONAL JURISDICTION
## OVER THE DEFENDANT

### A. Personal jurisdiction of defendant was acquired under 29 U.S.C.A. 1132(e).

Defendant's motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ.P. 12(B)(2), (4) and

(5) on the ground that plaintiff failed to obtain personal jurisdiction over defendant is wholly without merit

and must be denied.

Where an action is brought under ERISA in a district court of the United States, "it may be

brought in the district where the plan is administered, where the breach took place, or where a defendant

resides or may be found, and process may be served in any other district where a defendant resides or

may be found. 29 U.S.C. 1132(e)(2). By allowing for nationwide service of process, ERISA provides

for nationwide jurisdiction over a defendant based on minimum contacts with the United States itself rather

than with any particular forum state. Local 8A-28A Welfare and 401(K) Retirement Funds v. Golden

Eagles Architectural Metal Cleaning and Refinishing, 277 F.Supp.2d 291, 294 -295 (S.D.N.Y. 2003).

American Medical Ass'n v. United Healthcare Corp., 2001 WL 863561, at *4 (S.D.N.Y. July 31, 2001);

I.L.G.W.U. Retirement Fund v. Meredith Grey, Inc., 986 F.Supp. 816, 822 (S.D.N.Y.1997); Hetchkop

v. George Harms Excavating Corp., No. 92 Civ. 2239, 1993 WL 88106, at *2 (S.D.N.Y., March 26,

1993) citing Mariash v. Morrill, 496 F.2d 1138, 1143 (2d Cir.1974). See also Medical Mutual of Ohio

3

v. deSoto, 245 F.3d 561, 567 (6th Cir.2001); Board of Trustees, Sheet Metal Workers' Nat'l Pension

Fund v. Elite Erectors, Inc., 212 F.3d 1031, 1037 (7th Cir.2000); Bellaire Gen. Hosp. v. Blue Cross Blue

Shield of Michigan, 97 F.3d 822, 825 (5th Cir.1996); Varsic v. United States Dist. Court, 607 F.2d 245,

248 (9th Cir.1979).

     "Rather than asking whether the defendant has sufficient minimum contacts with the forum state

for the exercise of jurisdiction to comport with traditional notions of fair play and substantial justice, as

courts do when relying on a state's long arm statute to establish territorial jurisdiction, a court should ask

whether the defendant has sufficient minimum contacts with the United States." Local 8A-28A Welfare

and 401(K) Retirement Funds v. Golden Eagles Architectural Metal Cleaning and Refinishing, *supra,* 277

F.Supp.2d at 294.

     It is well established that an insurance company is subject to personal jurisdiction in the known

forum of their insured. McGee v. International Life Ins. Co., 355 U.S. 220 (U.S. 1957); Travelers Health

Ass'n v. Virginia, 339 U.S. 643 (U.S. 1950); Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353 (2d Cir. 2005).

In the instant action, plaintiff's claims are brought under ERISA, thus the jurisdictional provisions of 29

U.S.C.A. 1132(e)(2) are controlling. Defendant herein has overwhelmingly maintained minimum contacts

with the United States, and specifically with New York. In fact, defendant's actions in contracting to

provide insurance to a resident of Nassau County are, alone, sufficient to establish personal jurisdiction.

McGee v. International Life Ins. Co., *supra,* 355 U.S. 220. Furthermore, the policy in question, Pension

Fund International of Credit Suisse Group, is specifically marketed towards Credit Suisse employees who

do not work in Switzerland, but who do work in New York. (See Garg Affidavit annexed hereto as

Exhibit "C"). The policy issued to Mr. Garg was administered by the defendant's continuous contact with

Nassau County, the premiums were to be paid to Mr. Garg in Nassau County and the policy was ultimately breached in Nassau County. Id.

By providing an insurance policy in New York and maintaining it through continuous contact with Nassau County, defendant has availed itself of the privilege of doing business, not only within the United States, but specifically within New York, and thus is undeniably subject to jurisdiction here. Defendant's contacts with New York render it more than reasonable defendant would be brought into court here. To allow defendant to evade jurisdiction in New York, while it provided insurance to New York residents, presents an inherent unfairness which ERISA was specifically designed to protect against.

Although the defendant includes a "long-arm personal jurisdiction" paragraph, (leaving aside the fact that Specific Jurisdiction under ERISA is nationwide, not governed by the state long-arm statute), this paragraph merely reiterates a lack of "continuous and systematic" contact but fails to addresses Specific Jurisdiction stemming from the insurance agreement between the defendant and Mr. Garg. As discussed above, the defendant was incorrect to assume that New York Law governs personal jurisdiction in this matter and the poor quality of the defendant's argument is illustrated by the fact that, under NY Insurance Law § 1101, "making, or proposing to make, as insurer, any insurance contract" constitutes "doing business" in New York, and *per se* establishes not only specific jurisdiction, but also general jurisdiction.

Furthermore, defendant argues that its proper name is "Winterthur Life," but it is referred to as either "Winterthur" or "Winterthur-Columna" in all of the paperwork uncovered through preliminary investigation into this claim including its website which lists the legal name as simply "Winterthur". The relevant web page is annexed hereto as exhibit "D". If the defendant's proper legal name is in fact "Winterthur Life," then the plaintiff has no objection to, and respectfully requests that this court order

plaintiff to amend the complaint to replace every occurrence of the name "Winterthur" with the name "Winterthur Life."

## B. Defendant was Properly Served

Plaintiff properly served defendant in conformity with the Hague Convention. Although defendant misstates that the Hague Convention requires a German translation of the documents served on defendant, defendant was in fact re-served with a copy of the summons and complaint accompanied by a German translation, even though plaintiff was not required to do so. Plaintiff's initial service upon defendant was sufficient, as Service of Process requires "notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (U.S. 1950) *citing* Milliken v. Meyer, 311 U.S. 457 (U.S. 1940). *See* Fed. R. Civ. P. 4.

The Hague Convention provides a framework for Service of Process in a foreign country wherein each signatory state has agreed to set up a Central Authority who will effectuate service within their country. Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, TIAS no 6638, Chapter 1, Article 2 (US Ratification, 1969). It is the prerogative of the Central Authority in the signatory state, not the forum court, to make determinations as to the adequacy of Service under the Hague Convention. Id., Art 4-6. Upon receipt, the Central Authority reviews the documents for compliance with the Hague Convention or whatever reasonable requirements the individual nation may have added, and if any defects are found the Central Authority must then promptly inform the applicant of any objections or insufficiencies in the documents to be served. Id., Art 4. Having approved the document for service, the signatory nation's Central Authority,

6

either itself or through an authorized agent, serves the document and provides a receipt of service certifying that the documents conformed to all requirements for international service. Id. Art 5-6.

The Swiss Central Authority has promulgated a detailed manual of procedures for service of judicial and extrajudicial documents in Switzerland. Annexed hereto as exhibit "E," please find the relevant portions of the guideline.[1] The translation requirement referred to by the defendant is a Swiss requirement in addition the Hague Convention.  It cannot, by itself, form the basis for a motion to dismiss, and has been completely misunderstood by the defendant.  Pursuant to the guidelines described above, when an application for international service is received by the Swiss Authority and reviewed, it is then transmitted through simple service by ordinary mail.  The envelope contains a detailed explanation of the rights and privileges held by the recipient under Swiss Law, some of which can be read on the partial copy of the envelope attached to the defendant's motion.  Under Swiss Law, the recipient has a right, within a reasonable time, to object to mail service and demand formal service by a Central Authority official.

Translation is only required in the event that formal service is actually requested by the recipient.  If the recipient objects to the adequacy of the translation after formal service by the Central Authority, the Central Authority will then make a determination on the issue and, if necessary, provide the applicant an opportunity to cure the defect.  Pursuant to the Swiss Guidelines, failure to follow these procedures and failure to object to the Swiss Central Authority waives any right the recipient has to request a translation. It is only after all of these procedures are followed, and the defendant has been given a reasonable time to object, that a receipt of service will be transmitted to the applicant.

---

[1]  The entirety of the manual can be found at: http://www.ofj.admin.ch/themen/rechtshilfe/wegl-ziv-e.pdf.

7

The Swiss Central Authority determined the service made in the case at bar was sufficient and provided a receipt of service, which is annexed hereto as exhibit "B." The Hague convention does not ask a forum court to re-review these documents to ensure perfect conformity. "The Central Authority's return of a completed certificate of service is prima facie evidence that the Authority's service was made in compliance with the Convention," and is rebuttable only on a showing of substantial prejudice and a lack of actual notice. Resource Trade Financial v. PMI Alloys, 2002 U.S. Dist. LEXIS 14740 (S.D.N.Y. 2002); citing Northrop v. Compania Productora, 51 F.3d 1383, 1389 (8th Cir. 1995); See also Kim v. Dial Services Int'l, 1997 U.S. Dist. LEXIS 66, *11 (S.D.N.Y. 1997).

Furthermore, had the defendant requested formal service, the plaintiff provided the Central Authority with a letter, in German, explaining the nature of this action and the process by which to respond. Annexed hereto as Exhibit "F," please find this letter, stamped by the Swiss Central Authority. Although this is not a verbatim translation of the complaint, it was sufficient to apprize the defendant of the pending action and had the defendant challenged it through the appropriate channels, the Cantonal Court would likely have found that it satisfied Switzerland's translation requirement. Pursuant to the Swiss Guidelines, the defendant's failure to request a translation through the appropriate channels, despite being clearly informed of this right by the Swiss Central Authority, waives any argument they may have before this Court.

In stark contrast to the strict conformity argued for by the defendants, even in cases where service was made by means other than through the recipient nation's Central Authority, "failure to comply strictly with the requirements of the Hague Convention is not automatically fatal to effective service." Burda Media, Inc. v. Blumenberg, 417 F.3d 292 (2d Cir. 2005) upholding 2004 U.S. Dist. LEXIS 8804 (S.D.N.Y.

8

2004); *see* Convention, 20 U.S.T. 361, Chapter 1, Articles 15-16; Ackermann v. Levine, 788 F.2d 830, 840 (2d Cir. 1986)(the Convention was not intended to "supercede the general and flexible scheme" of notice pleading under Rule 4); Daly v. Llanes, 1999 U.S. Dist. LEXIS 18399 (S.D.N.Y.1999).

The defendant's explanation of both the law and the facts regarding service of process in this case is hopelessly skewed. The defendant was not served through "registered mail," and what counsel refers to as a "registered mail receipt" is the official simple service envelope used by the Swiss Department of Justice to serve this summons and complaint, which contains an explanation of the defendant's rights regarding service and the legal effect of accepting simple service. Defendant mistakenly relies on articles 2 and 5 of the Hague Convention in an attempt to support an inaccurate description the rules for service of process in Switzerland. Furthermore, the series of unreported decisions cited by the defendant are irrelevant. Those cases involve parties who actively circumvented the signatory nation's Central Authority, whereas in this action the Central Authority approved of and served the summons and complaint.

Nonetheless, any contention by defendant that the process was required to be translated into German is rendered moot by the fact plaintiff re-served defendant with translated documents. As such, defendant's arguments must be disregarded by this Court and its motion denied.

## POINT II.
## THE EASTERN DISTRICT OF NEW YORK
## IS THE PROPER VENUE FOR THIS ACTION

An ERISA action may be brought in any district court of the United States where "the plan is administered, where the breach took place, or where defendant resides or may be found." 29 U.S.C.A. 1132(e)(2). This provision of the code governs venue as well as a personal jurisdiction. See, e.g. Local 8A-28A Welfare and 401(K) Retirement Funds v. Golden Eagles Architectural Metal Cleaning and Refinishing, *supra,* 277 F.Supp.2d at 295.

### A. The breach took place in the Eastern District of New York

It is well settled that for purposes of determining proper venue in ERISA cases involving a breach of duty to pay benefits, the breach "takes place" where the benefits are to be received. See, Stickland v. Trion Group, Inc., 463 F.Supp.2d 921 (E.D.Wis.2006) (reasoning that breach takes place where benefits are to be received consistent with Congress's intent that provisions relating to venue in ERISA cases be construed in favor of plan participants and beneficiaries); Bostic v. Ohio River Co., 517 F.Supp. 627 (S.D.W.Va.1981) (finding breach took place where benefits were to be paid to plan participant); Keating v. Whitmore Manufacturing Co., 981 F.Supp. 890 (E.D.Pa.1997)(finding alleged breach took place where plaintiff was to receive her benefits consistent with Congress's intent favoring free access to Federal Courts and the presumption in favor of venue when forum is plaintiff's home); Ingalls Memorial Hospital v. Northeastern Care Ctr., Inc., 1991 WL 24505 (N.D.Ill. 1991) (citing Keel v. Group Hospitalization Medical Services, Inc., 695 F.Supp.223 (E.D.Va.1988), for proposition "breach took place" in place of performance where ERISA recipient would have received benefits).

10

In the instant action, the breach by Defendant, WINTERTHUR, took place in the Eastern District of the State of New York. Specifically, while the plaintiff was residing at 14 Woodhill Lane, Upper Brookville, NY, County of Nassau. Had defendant paid plaintiff the benefits he is entitled to, they would have been received at this address in Nassau County, New York. (See, Garg Affidavit annexed hereto as Exhibit "C"). In failing to provide plaintiff with his entitlements, defendant effectively breached its contract with plaintiff and failed to perform same in the County of Nassau, State of New York. As such, venue is proper in the Eastern District of New York under ERISA 1132(e)(2) as the breach took place in the Eastern District.


## B. Defendant is "found" within the Eastern District of New York

Furthermore, venue is proper in the Eastern District as defendant is "found" here. ERISA also alters the test for venue, making the minimum contacts test set forth in International Shoe Co. v. Washington, 326 U.S. 310 (1945), the appropriate inquiry for determining whether venue is proper. 29 U.S.C. 1132(e)(venue is proper anywhere the defendant "may be found"). Seitz v. Board of Trustees of the Pension Plan of the New York State Teamsters Conference Pension and Retirement Fund, 953 F.Supp. 100, 102 (S.D.N.Y. 1997). Notable factors include whether a defendant "performed some act or transaction by which he purposely avails himself of the privilege of conducting activities in the forum," and whether the action in question "arises out of or results from the defendant's forum-related activities." Seitz, 953 F.Supp, at 102, citing Varsic, 607 F.2d 245, 248 (9th Cir.1979).

The court in Seitz, held that defendant was "found" in the Eastern District of New York for purposes of venue since the plaintiff's lived, worked, earned their ERISA benefits in the Eastern District and

contributions to the plan were made from the Eastern District. Id. at 103. Similarly, in Dittmann v. Dyno Nobel, Inc., 1998 WL 865603 (N.D.N.Y.1998), the court determined defendant could be found, for purposes of ERISA, in the Northern District of New York where participants earned pension credit in the Northern District of New York, contributions were received from the Northern District of New York, participants worked in the Northern District and the denial of plaintiff's claim had an effect there.

In the instant action, the defendant is "found" in the Eastern District for purposes of venue under ERISA. Defendant availed itself of the privilege of transacting business in New York by providing insurance benefits to Mr. Garg, a Nassau County resident and other Credit Suisse First Boston employees. (See, Garg Affidavit annexed hereto as Exhibit "C".) Defendant directed all correspondence to Mr. Garg in Nassau County. Id. Mr. Garg earned his pension credits while residing in Nassau County. Id. Furthermore, the denial of Mr. Garg's benefits had a direct and significant effect in Nassau County, as he was forced to file for Social Security Disability benefits from the Nassau County Department of Social Services. Id. Unquestionably, the defendant "can be found" in the Eastern District of New York for the purposes of venue. 29 U.S.C. 1132(e).

Defendant has asserted that the Southern District was the improper venue for this action and now asserts the Eastern District is improper as well. It appears defendant would like this court to find that it is permitted to insure New York residents and not be subject to responsibility in New York when it wrongfully denies a claim and breaches an insurance agreement. This can not stand, as it flies in the face of justice and violates the purpose of ERISA. The Eastern District is the proper forum for this case and as such, defendant's motion must be denied. In the event this Court finds that the breach did not take place in the Eastern District of New York or that Defendant is not found within this district for purposes

12

of venue, then plaintiff respectfully requests this case be transferred to the Southern District of New York pursuant 28 U.S.C. 1408(a) in the interest of justice, as the plan was administered in the Southern District. As set forth in the affidavit of plaintiff and the plan document annexed hereto as Exhibit "G" Art. 34, the Winterthur plan was administered by Credit Suisse First Boston located in New York, New York. Also, defendant may be found in Southern District as well, as plaintiff worked in the Southern District while he earned his pension credits.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that the defendant's motion be denied in its entirety and that this Court grant such other and further relief as it deems just and proper.

Dated: New York, New York
       May 10, 2007

                                        By: ___/s/ Jaimee L. Nardiello_____
                                        JAIMEE L. NARDIELLO, ESQ (JN-3173)
                                        WEISER & ASSOCIATES
                                        Attorneys for Plaintiff:
                                        RAJIV GARG
                                        215 Lexington Avenue, 18th Floor
                                        New York, NY 10016
                                        (212) 213-3111

EXHIBIT "A"

AO 440 (Rev. 8/01) Summons in a Civil Action

UNITED STATES DISTRICT COURT

Eastern District of New York

RAJIV GARG,
                    Plaintiff,

    v.

WINTERTHUR,
                    Defendant.

SUMMONS IN A CIVIL ACTION

CASE NUMBER: 07 CV 510

TO: (Name and address of Defendant)

WINTERTHUR                       (To be served, if necessary, through)
General Guisan Strasse, 40       The Federal Justice & Police Department
8401 Winterthur, Switzerland     International Judicial and Extrajudicial
                                 Assistance
                                 Bundesrain 20
                                 3003 Bern, Switzerland

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Weiser & Associates
215 Lexington Ave., 18th Floor
New York, NY 10016

an answer to the complaint which is served on you with this summons, within _____Twenty (20)_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

ROBERT C. HEINEMANN

_____                              FEB 07 2007
CLERK                                                DATE

_____
BY DEPUTY CLERK

---

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
                                               Civil Action No: 07 CV 510
-----------------------------------------------------X

RAJIV GARG,
                                               Filed: 2/6/07
                    Plaintiff,
                                               VERIFIED COMPLAINT
    -against-
                                               Jury Trial Demanded
WINTERTHUR,

                    Defendant.

-----------------------------------------------------X

   The Plaintiff, RAJIV GARG, by his attorneys, WEISER & ASSOCIATES, complains

against the defendant, WINTERTHUR, stating upon information and belief:

**As and For a Cause of Action against Winterthur**

1.    This claim arises under the Employee Retirement Income Security Act of 1974, Title 29

U.S.C. Section § 1001 et seq.

2.    That on June 24, 2005 plaintiff commenced an action against the above captioned

defendant in the United States District Court for the Southern District of New York based upon the

same facts and occurrences alleged herein.

3.    That on January 18, 2007, plaintiff's action against defendant was dismissed without

prejudice from the Southern District for improper venue, as the proper venue is the United States

District Court for the Eastern District of New York.

4.    The Eastern District is the proper venue for this action because plaintiff lived in and earned

his ERISA benefits in this district, specifically, in the County of Nassau. Furthermore, the breach

took place in this district and the defendant may be found in the Eastern District.

---

5.    At all times mentioned, the defendant, WINTERTHUR, was and is a duly organized and

existing corporation chartered under and by virtue of the laws of Switzerland, with its principal

place of business at General Guisan-Strasse 40, 8401 Winterthur, Switzerland.

6.    The defendant, WINTERTHUR, is a subsidiary of Credit Suisse Group.

7.    The defendant, WINTERTHUR, doing business as Winterthur-Columna, is the legal

successor of and is currently responsible for the obligations incurred by Pension Fund International

of CS First Boston (Europe) AG.

8.    That on or about March of 1994, Pension Fund International of CS First Boston (Europe)

AG, became the legal successor of and responsible for the obligations incurred by CS First Boston

Pension and Life Assurance Scheme.

9.    That the defendant, WINTERTHUR, is responsible for providing occupational benefits for

the employees of Credit Suisse First Boston not residing or working in Switzerland and to insure

those employees against the economic consequences of age, disability and death.

10.   At all times herein mentioned, the above mentioned plans were and are duly organized and

existing "employee benefits plans" as defined by the Employee Retirement Income Security Act of

1974, 29 U.S.C. § 1001 et seq.

11.   That plaintiff became an employee of Credit Suisse First Boston Corporation on or about

June 1992.

12.   That on or about June 1992 the plaintiff, RAJIV GARG, became a member of CS First

Boston Pension and Life Assurance Scheme, the obligations of which have been assumed by the

defendant, WINTERTHUR. A copy of the Rules and Regulations of this pension plan are annexed

hereto as Exhibit "A".

---

13.   That at all times mentioned, the plaintiff is and was a qualified and vested participant in the

above mentioned pension and disability plan, administered by the defendant, WINTERTHUR.

14.   That by agreement dated September 2, 1999, Credit Suisse terminated the plaintiff's

employment with an effective date of termination as June 29, 1999.

15.   That this termination was the result of the plaintiff's permanent disability and the related

inability to perform the essential functions of his employment.

16.   That the plaintiff has complied with all conditions and requirements so as to receive benefits

under the abovementioned plan.

17.   That the plaintiff timely requested payment of all benefits accrued in the abovementioned

pension plan.

18.   That the defendant wrongfully denied plaintiff's claim for benefits.

19.   That the evaluation process undertaken by defendant, WINTERTHUR, and the resulting

denial, were arbitrary, illegal, capricious, unreasonable, discriminatory, an abuse of discretion,

unsupported by any substantial evidence, unsupported by any sound interpretation of the law, and

not made in good faith.

20.   That the above mentioned evaluation and denial failed to comply with the requirements of

29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1.

21.   That the defendant, WINTERTHUR, failed to inform the plaintiff regarding the procedures

associated with and/or the existence of an internal review procedure as required under the

Employee Retirement Income Security Act of 1974.

22.   That further internal review of the plaintiff's claim by the defendant would be futile.

23.   That as a direct and proximate result of defendant's misconduct, the plaintiff has sustained

24.    That as a direct and proximate result of the defendants' misconduct , the plaintiff has

incurred the attorney's fees and costs associated with this action.

Wherefore, the plaintiff seeks judgment against the defendants in the amount owed under

the provisions of the aforementioned disability and pension plan, with interest accrued thereof, as

well as the costs and reasonable attorneys fees associated with this action along with all other relief

as the court deems just and proper.

Dated:  New York, New York
        January 30, 2007

                                    *Jaimee Nardiello*
                                    JAIMEE L. NARDIELLO, ESQ. (3173)
                                    Weiser & Associates
                                    Attorneys for Plaintiff:
                                    RAJIV GARG
                                    Office & P.O. Address:
                                    215 Lexington Ave., 18th Floor
                                    New York, NY 10016
                                    212-213-3111

---

CLIENT VERIFICATION

STATE OF NEW YORK, COUNTY OF NEW YORK  ss:

        RAJIV GARG                , being duly sworn, says:

I am a Plaintiff in the action herein:  I have read the annexed

SUMMONS AND VERIFIED COMPLAINT

and know the contents thereof, and the same are true to my knowledge, except those matters

therein which are stated to be alleged upon information and belief, and as to those matters I believe

them to be true. My belief as to those matters therein not stated upon knowledge, is based upon

facts, records, and other pertinent information contained in my personal files.

Dated:     NEW YORK, NEW YORK
        1st FEB        , 2007                    X _____
                                                        Rajiv Garg

Subscribed and sworn to before me
this 1 day of *february* 2007

        _____
        NOTARY PUBLIC
        KRISHNA S. BASDEO
        NOTARY PUBLIC, State of New York
        No. 01BA6041462
        Qualified in New York County
        Commission Expires May 08, 2011

---

Pension Fund International of
CS First Boston (Europe) AG


# RULES AND
# REGULATIONS

---

CONTENTS                                                          page

GENERAL RULES ..................................................................................4
    Article 1 ....................................................................................4
        Name ...................................................................................4
    Article 2 ....................................................................................4
        Purpose ...............................................................................4
    Article 3 ....................................................................................4
        Domicile ..............................................................................4
    Article 4 ....................................................................................4
        Currency ..............................................................................4
    Article 5 ....................................................................................4
        Terms ...................................................................................4
    Article 6 ....................................................................................5
        Relationship to other insurance .............................................5
    Article 7 ....................................................................................5
        Overinsurance ......................................................................5
    Article 8 ....................................................................................5
        Destination of benefits ..........................................................6
    Article 9 ....................................................................................6
        Bringing in pre-existing vested benefits .................................6
    Article 10 ..................................................................................6
        Certificate of insurance ........................................................6
    Article 11 ..................................................................................6
        Assignment and pledging of benefit claims ............................6
    Article 12 ..................................................................................6
        Assignment of claims in case of liability of a third party ........6
    Article 13 ..................................................................................6
        Reduction of benefits ...........................................................6
    Article 14 ..................................................................................7
        Form of benefits ...................................................................7
    Article 15 ..................................................................................7
        Improperly received benefits .................................................7
    Article 16 ..................................................................................7
        Liability ...............................................................................7
    Article 17 ..................................................................................7
        Re-insurance ........................................................................7

MEMBERSHIP ......................................................................................8
    Article 18 ..................................................................................8
        Principle ..............................................................................8
    Article 19 ..................................................................................8
        Prerequisites ........................................................................8
            Entry age .........................................................................8
            Employment contract/working hours ..................................8
            Entrance application .........................................................8
            Proof of health .................................................................8
            Proceedings ......................................................................8

Case 2:07-cv-00510-ADS-AKT   Document 10   Filed 05/10/07   Page 22 of 62 PageID #: 122

Article 20 .......................................................................................................... 8
  Beginning of insurance coverage ...................................................................... 8
    Definite insurance coverage .......................................................................... 8
    Deficient compliance with prescribed proceedings/late compliance ..... 8
    Leave of absence ............................................................................................ 9
Article 21 .......................................................................................................... 9
    End of insurance coverage ............................................................................ 9
Article 22 .......................................................................................................... 9
    Continued coverage ....................................................................................... 9
Article 23 .......................................................................................................... 9
    Reduction of benefits ..................................................................................... 9
Article 24 .......................................................................................................... 9
    Duty to inform ............................................................................................... 9
Article 25 ........................................................................................................ 10
    Re-entry ......................................................................................................... 10

BENEFITS ......................................................................................................... 11
Article 26 ........................................................................................................ 11
    Insurance benefits ........................................................................................ 11
Article 27 ........................................................................................................ 11
    Retirement pension ....................................................................................... 11
    Beginning and end of claim ......................................................................... 11
    Amount and maximum amount ..................................................................... 11
    Early retirement ........................................................................................... 11
    Deferred commencement of pension ............................................................ 12
    Retirement of a disabled member ................................................................ 12
Article 28 ........................................................................................................ 12
    Disability pension ......................................................................................... 12
    Prerequisites ................................................................................................ 12
    Determination of disability .......................................................................... 12
    Amount and maximum amount ..................................................................... 12
    Beginning and end of claim ......................................................................... 12
    Insurance of continued employment in case of partial disability ............. 12
    Reduction of the disability pension ............................................................. 13
    Revision of disability ................................................................................... 13
Article 29 ........................................................................................................ 13
    Survivors benefits ........................................................................................ 13
    Principle ....................................................................................................... 13
    Amount of survivor's pension ...................................................................... 13
    Competing claimants ................................................................................... 13
    Beginning and end of claim ......................................................................... 14

VESTED BENEFITS ......................................................................................... 15
Article 30 ........................................................................................................ 15
    Vesting .......................................................................................................... 15
    Principle ....................................................................................................... 15
    Amount .......................................................................................................... 15
    Calculation formula for determining the acquired benefits ..................... 15
    Method of payment ...................................................................................... 17

ORGANISATION AND ADMINISTRATION ................................................... 18
Article 31 ........................................................................................................ 18
    Organisation ................................................................................................ 18
Article 32 ........................................................................................................ 18
    Board of the foundation ............................................................................... 18
Article 33 ........................................................................................................ 18
    Administration ............................................................................................. 18

FINANCING ...................................................................................................... 19
Article 34 ........................................................................................................ 19
    Employer's contribution .............................................................................. 19
Article 35 ........................................................................................................ 19
    Employee's contribution .............................................................................. 19

CONTROLLING ................................................................................................ 20
Article 36 ........................................................................................................ 20
    Auditors ........................................................................................................ 20
Article 37 ........................................................................................................ 20
    Actuarial audit ............................................................................................. 20
Article 38 ........................................................................................................ 20
    Extraordinary events ................................................................................... 20
Article 39 ........................................................................................................ 20
    Supplemental decisions ............................................................................... 20
Article 40 ........................................................................................................ 20
    Supervision ................................................................................................... 20

FINAL AND TRANSITIONAL PROVISIONS ................................................. 21
Article 41 ........................................................................................................ 21
    Definitive text .............................................................................................. 21
Article 42 ........................................................................................................ 21
    Omissions in regulations ............................................................................. 21
Article 43 ........................................................................................................ 21
    Dissolution and liquidation ......................................................................... 21
Article 44 ........................................................................................................ 21
    Revision of rules and regulations ............................................................... 21
Article 45 ........................................................................................................ 21
    Enactment ..................................................................................................... 21

## GENERAL RULES

### Article 1
**Name**

Under the name "Pension Fund International of CS First Boston (Europe) AG" there exists a foundation under Art. 80 ff. of the Swiss Civil Code, established on the 18th of March 1994 by the charter of the foundation.

### Article 2
**Purpose**

The foundation is intended to provide occupational benefits for the employees not residing or working in Switzerland of CS First Boston (Europe) AG (founding company) or closely economically or financially affiliated Swiss companies, and to insure those employees against the economic consequences of age, disability and death.

### Article 3
**Domicile**

The foundation is domiciled at the domicile of the founding company.

### Article 4
**Currency**

The foundation is kept in its entirety in US Dollars. For conversion of denominations other than US Dollar the official conversion rates of CS First Boston (Europe) AG are applicable.

### Article 5
**Terms**

| | |
|---|---|
| Foundation | Pension Fund International of CS First Boston (Europe) AG |
| Founding company | CS First Boston (Europe) AG |
| Employer | company affiliated with the foundation |
| Employee | male or female person with an unlimited employment contract with the employer |
| Member | male or female person insured by the foundation |
| Age | age at 1st of January, with fractions of 6 months or more rounded up to a full year |
| Retirement age | the age at the end of the month of the 60th birthday |
| Attributable years of service | years of employment, rounded up or down to full years, which have been spent in the service of the CS First Boston Group prior to retirement age, fractions of six months or more are rounded up to a full year |
| Determining salary | the agreed upon base salary without any further fringe benefits such as bonus or overtime pay |

| | |
|---|---|
| Insured salary (for retirement pension only) | |
| - for members before June 1, 1989 | the determining salary |
| - for members after May 31, 1989: | the determining salary up to the amount of pound sterling 75'000.-. This amount shall be adjusted according to the limits of the U.K. Inland Revenue on the first day of each calendar year. |
| Enabled pension salary | the maximum insured salary of the last five years before retirement |

### Article 6
**Relationship to other insurances**

Benefits of the company accident insurance are taken into account in determining benefits from the foundation.

If benefits of the company accident insurance reach or surpass the benefits of the foundation, the benefits of the foundation are cancelled. If the benefits of the company accident insurance do not reach the level of benefits of the foundation, the foundation will cover the difference. The comparison and the difference will be established with recognised actuarial methods.

Benefits of private insurance will not be taken into account under any circumstances.

### Article 7
**Overinsurance**

If benefits of the foundation together with
- state retirement/disability and survivor's insurance
- compulsory accident insurance,
- insurance for which the company or, on behalf of the company, a foundation has paid premiums,
- any claims against a liable third party,
- any earned income of a disabled person

yield an amount of more than 100 % of the last effective determining salary, the benefits of the foundation will be reduced by the excess amount.

The amount of lump sum payments made in lieu of pensions will be determined according to the actuarial tables of the foundation.

The calculation of benefits will be made according to the date of death or, in the case of a disability pension, according to the beginning of the pension.

The board of the foundation may mitigate the decrease of benefits due to inflation.

The foundation may demand from any claimant of death or disability benefits that she/he cedes to the foundation claims that she/he has against liable third parties, up the amount of the benefits the foundation provides.

The foundation may decrease its benefits proportionally if the insured person has caused the death or disability through serious fault, or has resisted employment rehabilitation.

The same holds true for a survivor who is responsible for the death of the insured person through a serious fault.

### Article 8

Destination of benefits

The benefits of the foundation are designed for coverage of old age, death and disability. It may decide upon any measures deemed appropriate to secure the purpose of the benefits, in particular withholding benefits, as long as the purpose intended by the foundation appears to be endangered.

### Article 9

Bringing in pre-existing vested benefits

Vested benefits from pension funds of former employers may be used to acquire an additional retirement pension and related supplemental pensions.

### Article 10

Certificate of insurance

Members receive annually a certificate indicating the amount of insured and supplemental benefits from the pension fund.

### Article 11

Assignment and pledging of benefit claims

All claims to the foundation are exclusively for the personal support of the claimants. Claims are both before and after their due date pledgeable only to the extent permitted by law. Benefit claims will pass to survivors of claimants even if survivors have given up their right to inheritance.

### Article 12

Assignment of claims in case of liability of a third party

In case of liability of a third party for death or damage to the health of a member, the member or his survivors must assign their claims against such parties (but not their claims for personal satisfaction) to the foundation up to the amount of the benefits provided by the foundation. The foundation may suspend its benefits as long as the assignment is refused.

### Article 13

Reduction of benefits

The board of the foundation may reduce or eliminate the benefits of a member or a beneficiary of a pension if
a) the disability was caused by gross negligence,
b) an illegal act is taken in connection with the benefits of the foundation that endangers or impairs the interests of the foundation. Such members have claim to return of their own contributions and pre-existing vested benefits plus interest, with reductions made for any benefits already received, risk credit borne by the foundation, and foundation counter-claims.

6

### Article 14

...ny of the... determined in the discretion of... paid to the member in monthly instalments at the end of the month. The instalment for the month in which the claim expires will be fully paid.
b) The member may demand, as provided in applicable regulations, that part of his retirement pension be paid as a lump sum. The lump sum may not diminish his retirement pension more than 50 %. The member must submit to the board of the foundation a specific written request no later than three years in advance.
c) In well-founded cases the board of the foundation may, upon request of the member, agree to a lump sum payment in lieu of a pension benefit.

### Article 15

Improperly received benefits

If benefits of the foundation have been improperly received, the foundation may request immediate restitution as well as compensate for overpayments by adjustment of future benefits.

### Article 16

Liability

Only the assets of the foundation, with the reservation of re-insured benefits with an insurance company, are liable for the obligations of the foundation.

### Article 17

Re-insurance

The foundation can re-insure the benefits of the pension funds entirely or partially with an insurance company. Premiums will be paid by the foundation and the foundation will receive all benefits of the reinsurance.

7

# MEMBERSHIP

### Article 18

Principle

Entry into the foundation is compulsory for all employees of CS First Boston (Europe) AG and of its close financial or economic affiliates, if these companies are, with the consent of the board of the foundation, affiliated to the foundation.

### Article 19

Prerequisites

Entry age

Entry will take place on the 1st of January following the 24th birthday or at the beginning of employment, if the employee has reached the age of 24 by the 1st of January of the year.

Employment contract/working hours

The employment contract must be for a period longer than 3 months and, in the case of part-time work, the hours worked must be at least 50 % of the customary working hours.

Entrance application

The employee applying for entry must fully and truthfully complete the entry application form within one month.

Proof of health

The applicant employee must within one month provide evidence of his health through the certificate of a physician chosen by the pension fund. Fees for the medical examination are borne by the employer.

Proceedings

The entry application has to be submitted to the foundation within one month.
The examination by the physician chosen by the foundation must take place within the same period.

### Article 20

Beginning of insurance coverage

Provisional insurance coverage

The applicant employee will have provisional insurance coverage for three months after the beginning of employment, provided the age condition is fulfilled. If, during the period of provisional insurance coverage, an event giving rise to benefits occurs, the foundation can reduce its benefits, if the event is connected with a previously existing illness or health problem.

Definitive insurance coverage

If the applicant employee fulfils the prerequisites for entry within the stated period and has not been informed of any reduction of benefits, he will be admitted retroactively to the time of beginning of employment, to the extent the age condition is fulfilled.

Deficient compliance with prescribed proceedings/late compliance

If the applicant employee does not fulfil the prerequisites, he is not admitted and the provisional coverage is cancelled.

8

If the prerequisites are fulfilled after the deadline, the board of the foundation will determine the level and starting date of benefits.

Leave of absence

No contributions are paid during a leave of absence. Insurance coverage remains for half a year and is then cancelled. At the time that work resumes, contributions of the company that were due during the period of leave of absence must be paid retroactively.

### Article 21

End of insurance coverage

Insurance coverage will be cancelled upon the termination of the employment contract if no claim to disability or retirement pension exists.
The same rule applies if part-time working hours are reduced to less than 50 % of customary working hours.
The board of the foundation may, in special cases, permit an employee who has left the company to remain in the foundation.

### Article 22

Continued coverage

Identical insured benefits will be provided for 30 days after leaving the company, but no longer than until the beginning of a new employment.

### Article 23

Reduction of benefits

The foundation determines within three months after the deadline for submitting the entry application if there is a heightened risk and a reduction of benefits. Reduction of benefits must be communicated to the member in writing.
After a period of five years the reduction will be cancelled if at that time the member enjoys full working capability.

### Article 24

Duty to inform

The member and all claimants are required to provide truthfully all necessary information and to submit all required proofs. The members must also, without written request, inform the foundation in writing of all changes in civil status (marriage, death, divorce etc.) and any duties of support assumed by the member. Upon request, pensioners must provide proof that they are alive and disabled persons must provide a certificate from the physician chosen by the foundation.
The foundation refuses all liability for the consequences of violation of these duties and reserves the right to hold liable the responsible person.

9

Article 25

Re-entry
Members who ... like any new entry.

10

BENEFITS

Insurance benefits
The foundation insures:
- retirement pensions
- disability pensions
- survivors pensions

Article 26

Article 27

Retirement pension
Beginning and end of claim
Upon reaching the regular retirement age, the member has a claim to a retirement pension. The claim for a retirement pension lapses on the last day of the month of death.

Amount and maximum amount
The amount of the yearly retirement pension at the regular retirement age is determined by the following table:

| Applicable years of service | Percent of entitled pension salary |
|---|---|
| 1 | 1,67 |
| 2 | 3,33 |
| 3 | 5,00 |
| 4 | 6,67 |
| 5 | 8,33 |
| 6 | 10,00 |
| 7 | 11,67 |
| 8 | 13,33 |
| 9 | 15,00 |
| 10 | 17,00 |
| 11 | 19,00 |
| 12 | 21,00 |
| 13 | 23,00 |
| 14 | 25,00 |
| 15 | 27,00 |
| 16 | 29,00 |
| 17 | 32,00 |
| 18 | 35,00 |
| 19 | 38,00 |
| 20 | 41,00 |
| 21 | 44,00 |
| 22 | 48,00 |
| 23 | 52,00 |
| 24 | 56,00 |
| 25 and more | 60,00 |

Early retirement
A member may seek early retirement following her/his 50th birthday. The member has a claim to a diminished retirement pension starting immediately. The pension will be calculated according to actuarial methods.

11

Deferred commencement of pension
If, after reaching the regular retirement age, a member is still employed by the company, the board of the foundation may, in agreement with the employer, establish a written agreement with the member, regarding retirement pension items including the pension starting date and the amount of pension and risk insurance.

Retirement of a disabled member
When a beneficiary of a full disability pension reaches the regular retirement age, she/he receives, from this time on, a retirement pension that will be calculated according to the entitled pension salary in force at the time of the beginning of the disability taking into consideration the total years of service (including years of disability). The amount of the retirement pension may not exceed the amount of the last paid disability pension.

Article 28

Disability pension
Prerequisites
Members entirely or partly disabled for health reasons who were insured at the time of commencement of the condition that led to the disability have claim to a disability pension.

Determination of disability
The board of the foundation makes all determinations as to disability. Its decision is based upon an expert opinion of the physician chosen by the foundation.
A full disability is assumed if a member is at least 2/3 disabled. A partial disability of less than 1/4 will not be considered a disability for benefits purposes.
If a member refuses the physician's examination ordered by the board of the foundation, the foundation may suspend benefits.

Amount and maximum amount
The full year disability pension is equal to 75 % of the determining yearly salary up to a salary amount of Pound Sterling 107'000.-- or equivalent in US Dollar and 22.5 % of the excess salary amount.

The maximum amount of the yearly disability pension is Pound Sterling 150'000.-- or equivalent in US Dollar.

Any public disability benefits are deducted from the benefits of the foundation.

In case of partial disability, benefits are reduced according to the degree of remaining ability.

Beginning and end of claim
The disability pension becomes due as soon as the employer reduces the member's salary due to continuous disability. It is payable until the cessation of disability or until the date of regular retirement age, whichever comes first. At this time the disability pension will be replaced by a retirement pension according to art. 27, paragraph 5.

Insurance of continued employment in case of partial disability
If a partially disabled person continues to be employed by the company, the foundation will continue to insure the reduced salary.
The partially disabled employee will be treated as two employees, one fully disabled and one fully employed.

12

Reduction of the disability pension
Disability pensioners are required to inform the foundation of any regular earned income. If, upon request, this information is not provided, the pension may be suspended.

Revision of disability
In case of change in the degree of disability, the disability pension may be re-determined or cancelled. The disability pensioner is required to inform the foundation immediately of any changes in the degree of his disability.

Article 29

Survivors benefits
Principle
In case of death of a member, of a beneficiary of a disability pension or a retirement pension, the following persons have a claim to a survivor's pension:
a)  a wife sharing a common household with minor children,
b)  a disabled wife,
c)  a wife, even if a common household no longer exists due to health reasons or infirmity of age,
d)  a wife sharing a common household with the member, if at the time of death the member and wife have been married for more than 5 years, the wife is 35 years or older, her income is smaller than that of the deceased member and her income from all sources is less than Pound Sterling 100'000.--.
e)  If the surviving wife has permanently abandoned the common household, the board of the foundation may determine in her judgement an amount of survivor's pension payable to the wife so that the pension amount corresponds to the amount necessary to the support of the wife from the member's earned income for the years preceding his death. In no case can this amount exceed the sum of a full survivor's pension.
f)  In case of surviving partners and husbands, who were in a documented way significantly assisted by the deceased member, the board of the foundation can, after careful consideration of all personal circumstances and by written statement of the member, treat these persons on equal terms as the wife under paragraphs a) to e).

Amount of survivor's pension
In case of death of a member before the regular retirement age, or, in case of premature retirement, before beginning of pension payments, a survivor's benefit equal to seven times the determining salary becomes due. Of that sum, an amount equal to four times the determining salary will be paid as a lump sum.
The remainder will be converted to a survivor's pension.
In case of death after the beginning of pension payments, if the pension has been paid for fewer than five years, the lump sum will be reduced according to the number of years for which benefits were payable. An additional survivor's pension equal to 50 % of the retirement pension paid to the member will be paid.

Competing claimants
The board of the foundation will decide between competing claimants pursuant to the principles of paragraph a) to f) above.

13

**Beginning and end of claim**
The survivor's pension starts on the month following the death of the member. The pension ceases upon the first of the following events:
a) remarriage
b) entering into a long-term life partnership
c) death of the claimant

---

# VESTED BENEFITS

## Vesting

**Principle**
If the employment of a member ceases for reasons other than age, retirement, disability or death, vested benefits are due.

If the employment terminates prior to two full years of service, no claim to vested benefits exists other than for benefits acquired by pre-existing vested benefits brought in.

**Amount**
The amount of vested benefits is determined according to:
a) the present value of the acquired benefits and
b) the actuarially calculated present value of the brought benefits by pre-existing vested benefits brought in.

Vested benefits are in all cases at least as high as the actuarially calculated present value of the pre-existing vested benefits brought in.

**Calculation formula for determining the acquired benefits**

$$\text{acquired benefits at normal retirement date} \times \frac{\text{attributable years of service}}{\text{potential years of service until normal retirement age}}$$

The present value of acquired benefits is determined by multiplying the amount of the acquired benefits with the appropriate present value factor of the following table:

---

| Male Age | Present value factor | Female Age | Present value factor |
|---|---|---|---|
| 20 | 2.273 | 20 | 2.397 |
| 21 | 2.380 | 21 | 2.507 |
| 22 | 2.489 | 22 | 2.619 |
| 23 | 2.605 | 23 | 2.739 |
| 24 | 2.725 | 24 | 2.863 |
| 25 | 2.849 | 25 | 2.994 |
| 26 | 2.979 | 26 | 3.130 |
| 27 | 3.116 | 27 | 3.271 |
| 28 | 3.260 | 28 | 3.419 |
| 29 | 3.409 | 29 | 3.575 |
| 30 | 3.565 | 30 | 3.738 |
| 31 | 3.729 | 31 | 3.908 |
| 32 | 3.900 | 32 | 4.086 |
| 33 | 4.079 | 33 | 4.271 |
| 34 | 4.266 | 34 | 4.465 |
| 35 | 4.462 | 35 | 4.670 |
| 36 | 4.668 | 36 | 4.882 |
| 37 | 4.883 | 37 | 5.105 |
| 38 | 5.108 | 38 | 5.339 |
| 39 | 5.344 | 39 | 5.583 |
| 40 | 5.591 | 40 | 5.840 |
| 41 | 5.850 | 41 | 6.110 |
| 42 | 6.123 | 42 | 6.392 |
| 43 | 6.408 | 43 | 6.688 |
| 44 | 6.708 | 44 | 6.997 |
| 45 | 7.024 | 45 | 7.322 |
| 46 | 7.355 | 46 | 7.663 |
| 47 | 7.705 | 47 | 8.019 |
| 48 | 8.071 | 48 | 8.394 |
| 49 | 8.461 | 49 | 8.787 |
| 50 | 8.871 | 50 | 9.200 |
| 51 | 9.305 | 51 | 9.635 |
| 52 | 9.764 | 52 | 10.092 |
| 53 | 10.249 | 53 | 10.573 |
| 54 | 10.763 | 54 | 11.081 |
| 55 | 11.311 | 55 | 11.615 |
| 56 | 11.893 | 56 | 12.180 |
| 57 | 12.512 | 57 | 12.777 |
| 58 | 13.174 | 58 | 13.410 |
| 59 | 13.879 | 59 | 14.079 |
| 60 | 14.634 | 60 | 14.772 |

---

**Method of payment**
Vested benefits are transferred to the credit of the departing member with his new pension fund or, in case no such institution exists, are maintained by means of a vested policy or a vested account.
If the departing member demands another form of payment, he/she must present a specific written request, together with proof that the legal requirements for such payments are met.

### Article 31

**Organs of the foundation**
The organs of the foundation are the board of trustees of the foundation and the administration.

### Article 32

**Board of the foundation**
The board of the foundation is composed of three to five members which, with the reservation of Art. 89bis, paragraph 3, ZGB, are appointed by the founding company.

The president of the board of the foundation is designated by the board of directors of the founding company. The board of the foundation otherwise sets itself up and determines its own form. It designates the persons who represent the foundation and sign for it.

The period of office is two years. Re-election is admitted. Members automatically cease being on the board of the foundation as soon as their employment contract ends. The members replacing them are elected for the remaining period of office of their predecessors.

The board of the foundation is competent to act if a majority of its members are present. Decisions must be approved by a majority of those present. In case of equality of votes, the president gives the casting vote.

Minutes will be kept of each meeting of the board of the foundation and must be signed by the president and by the secretary of the board of the foundation. Decisions may also be made in writing without a meeting of the board provided that no member of the board requests a meeting in person.

The members of the board of the foundation and their delegates are subject to a duty of strict confidence as to knowledge acquired regarding the personal circumstances of the insured members and the business affairs of the founding company and the affiliated employers.

### Article 33

**Administration**
The board of the foundation may, within its own responsibilities, delegate the administration of ongoing affairs, especially bookkeeping and customary business with members and beneficiaries, to a manager. The manager is responsible to the board of the foundation.

The manager takes care of:
- ongoing business affairs
- correspondence with members, beneficiaries of pensions and claimants
- the issuing of yearly balance statements and activity reports.
The manager is authorised to handle all cases according to the current regulations. He participates at the sessions of the board of the foundation in an advisory capacity and writes the minutes.

18

### Article 34

**Employer's contribution**
The employer contributes the amount needed to finance the necessary actuarial reserves and the cost of risk insurance.

### Article 35

**Employee's contribution**
Employees are exempt from contributions.

19

## CONTROLLING

### Article 36

**Auditors**
The auditors are appointed by the board of the foundation. They examine yearly the correctness of the business management, accounts and investment of assets. The report of the auditors shall be reviewed and approved by the board of the foundation and presented to the supervisory authority. The period of office is one year. Re-election is allowed.

### Article 37

**Actuarial audit**
The board of the foundation will organise at least every ten years an actuarial audit of the foundation by a recognised expert. The actuarial report is to be submitted to the supervisory authority.

If such an audit reveals a deficiency in one of the pension funds, the board of the foundation will decide upon appropriate measures to be taken, based upon the proposals of recognised experts for occupational benefits.

### Article 38

**Extraordinary events**
If the board of the foundation discovers that, because of extraordinary events such as war, epidemics, loss of foundation assets etc., a major change in the actuarial basis for the insurance has occurred or will occur, it is authorised, in agreement with the founding company, to reduce immediately future benefits as well as current pensions on a provisional basis.

The provisional benefits replace the regulatory benefits until the regulations have been revised on the basis of an actuarial audit undertaken within a reasonable time.

### Article 39

**Supplemental decisions**
The board of the foundation is authorised to make decisions concerning cases not specifically covered by the regulations in its free judgement within the context and purpose of the regulations.

### Article 40

**Supervision**
The foundation is under supervision as required by law.

20

## FINAL AND TRANSITIONAL PROVISIONS

### Article 41

**Definitive text**
The German text of these rules is definitive.

### Article 42

**Omissions in regulations**
In cases where no applicable provision can be found in the regulations, the board of the foundation will make decisions based upon the purpose of the foundation.

### Article 43

**Dissolution and liquidation**
In case of merger of the founding company or its dissolution and passage to a legal successor the foundation follows the founding company.

In case of liquidation of the founding company, the foundation will continue to exist, without opposition decision of the board of the foundation, as long as any claimants are living.

In case of complete or partial liquidation of the foundation the assets of the foundation shall be used for the benefit of the claimants according to a plan authorised by the supervisory authority.

Restitution of foundation assets to the founding company or affiliated companies or their legal successors is not permitted.

### Article 44

**Revision of rules and regulations**
The board of the foundation can - in context with the founding company and within the rules of the charter of the foundation - amend the rules and regulations within the legal framework. The up-to-the-date of the amendment of the rules and regulations accumulated capital must be preserved for occupational welfare benefits of the members.

### Article 45

**Enactment**
The regulations dated December 31, 1993 are accepted by the board of the foundation and are enacted the first of January, 1994.

Two copies of rules and regulations are to be submitted to the supervisory authority.

Zug, December 31, 1993

21



8024 Zürich

98.42.172015.00044088

DIE POST
LA POSTE
LA POSTA

Recommandé Suisse

Das                                    ...ding der Gerichtsurkunde durch den Z...





## Empfangsbestätigung

(Der Empfang ist auch im Zustellbuch
zu bescheinigen)

Der Unterzeichnete bescheinigt den Empfang
der Sendung mit folgendem Inhalt:

G-Nr. RH/WR070310          ES-Nr 2

Summary of the Document to be served
Summons+verified Complaint d.US
Distr.Court New York/USA,1fach,NO.
07 CV 510;engl./z.Teil deutsche Uebers .

Ort _Winterthur_  Datum _12.3.07_

Unterschrift _A. Kube_

## Gerichtsurkunde zuzustellen an

"Winterthur" Schweizerische Versicherungs-
Gesellschaft
General Guisan-Str. 40
Postfach 357
8401 Winterthur

Zurückzusenden an  Obergericht des Kantons Zürich
Hirschengraben 15
8001 Zürich (Schweiz)
Briefadresse: Postfach, 8023 Zürich
(Schweiz)

**CERTIFICATE**
*ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1) que la demande a été exécutée*
— the (date) — le (date)                    *12.03.2007*
— at (place, street, number) - à (localité, rue, numéro)

*General Guisan-Str 40*
*8401 Winterthur*

— in one of the following methods authorized by article 5:
— *dans une des formes suivantes prévues à l'article 5:*

☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
*a) selon les formes légales (article 5, alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method:
*b) selon la forme particulière suivante:*

☐ (c) by delivery to the addressee, who accepted it voluntarily *
*c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

— (identity and description of person)
— *(identité et qualité de la personne)*

— relationship to the addressee family, business or other
— *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse
the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais
dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pièces renvoyées:*

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

Done at   *Zürich*   , the *14.3.07*
*Fait à*
**OBERGERICHT ZÜRICH**
Signature and/or stamp.
*Signature et/ou cachet*

# EXHIBIT "B"



**R** 8024 Zürich

98.42.172015.00044128
Recommandé Suisse

...htsurkunde durch de...

## Empfangsbestätigung
(Der Empfang ist auch im Zustellbuch
zu bescheinigen)

Der Unterzeichnete bescheinigt den Empfang
der Sendung mit folgendem Inhalt:

G-Nr. RH/WR070476          ES-Nr 1

Summary of the Document to be served
Summons+ Complaint d.US Distr.Court
E-Distr.New York/USA;1fach,engl./d.
Uebersetzung;No.07CV510(R.Garg)

Ort _Winterthur_   Datum _23.4.07_

Unterschrift _____

## Gerichtsurkunde zuzustellen an

Winterthur Versicherungen
z. Hd. eines gesetzlichen Vertreters
~~Generaldirektion Suisse  40~~

Zurückzusenden an  Obergericht des Kantons Zürich
Hirschengraben 15
8001 Zürich (Schweiz)
Briefadresse: Postfach, 8023 Zürich
(Schweiz)

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1) que la demande a été exécutée*
     -- the (date) -- *le (date)* _____ 23. 04. 2007
     -- at (place, street, number) - *à (localité, rue, numéro)*

Gen. Guisan-Str. 40, 8401 Winterthur

-- in one of the following methods authorized by article 5:
-- *dans une des formes suivantes prévues à l'article 5:*

    [X] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
       *a) selon les formes légales (article 5. alinéa premier, lettre a)*

    [ ] (b) in accordance with the following particular method:
       *b) selon la forme particulière suivante:* _____

    [ ] (c) by delivery to the addressee, who accepted it voluntarily.*
       *c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

    - (identity and description of person)
    - *(Identité et qualité de la personne)*

_____

    - relationship to the addressee family, business or other
    - *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pièces renvoyées:*

_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

_____
_____

Done at ___Zürick___ , the 26. 4. 07
*Fait à* _____ , *le*

Signature and/or stamp
*Signature et/ou cachet*

... T ZÜRICH
...chshilfe
8023 Zürich (Schweiz)

Ref.Nr. Obergericht Rechtshilfe
(Bitte immer angeben)

SUMMARY OF THE DOCUMENT TO BE SERVED
*ÉLÉMENTS ESSENTIELS DE L'ACTE*

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial
matters, signed at The Hague, November 15, 1965.

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires
en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

(article 5, fourth paragraph)
*(article 5, alinéa quatre)*

Name and address of the requesting authority:
*Nom et adresse de l'autorité requérante:*
WEISER & ASSOCIATES; 215 Lexington Ave., 18th Floor; New York, New York 10016; United States

Particulars of the parties:
*Identité des parties:*
Attorneys for Plaintiff: Rajiv Garg

**JUDICIAL DOCUMENT**
*ACTE JUDICIAIRE*

Nature and purpose of the document:
*Nature et objet de l'acte:*
To institute suit, on behalf of Mr. Garg, in the Eastern District of New York (EDNY)

Nature and purpose of the proceedings and, where appropriate, the amount in dispute:
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

Date and place for entering appearance:
*Date et lieu de la comparution:*

Court which has given judgment**:
*Juridiction qui a rendu la décision:*
N/A

Date of judgment**:
*Date de la décision:*
N/A

Time limits stated in the document**:
*Indication des délais figurant dans l'acte:*

**EXTRAJUDICIAL DOCUMENT**
*ACTE EXTRAJUDICIAIRE*

Nature and purpose of the document:
*Nature et objet de l'acte:*

Time limits stated in the document:**
*Indication des délais figurant dans l'acte:*

---

ATTORNEYS AT LAW
215 LEXINGTON AVENUE, NEW YORK, N.Y. 10016
TEL: (212) 213-3311
FAX: (212) 213-5939

MARTIN J. WEISER
NICOLE S. WEISER

BERNARD A. ANDERSON**
JAIMEE L. NARDIELLO*

E-MAIL:
INFORMATION@WEISERLAW.COM
INTERNET:
WWW.WEISERLAW.COM

ROY C. GORDON
JAMES J. CURRY, JR.*
OF COUNSEL

*MEMBER OF N.Y. & N.J. BAR
**MEMBER OF N.Y. & PA. BAR

April 9, 2007

Winterthur Group
General Guissan Strasse, 40
8401 Winterthur, Switzerland

Zusammenfassung von "Summons and Complaint"
(Dieses ist ein Computer übersetzer Text)

Innerhalb Zwanzig (20) Tage nach Ihnen empfangen Sie dieses "Summons and Complaint" Sie müssen Ihre Antwort zum Rechtsanwaltsbüro von liefern:

Weiser & Associates
215 Lexington Ave., 18th Floor
New York, New York 10016
United States

Vereinigte Staaten, die die Rechtsanwälte für den Zivilkläger sind. Sie müssen diese Antwort zur Sekretärin von "United States District Court for the Southern District of New York" auch liefern. Die Ablehnung zum Liefern einer Antwort ergibt automatisches Urteil. Der Zweck dieser Beanstandung ist einen Prozeß im Namen RAJIV GARG anzufangen, gegen WINTERTHUR, mit dem Ziel das Zurückgewinnen der falsch abgelehnten Erwerbsunfähigkeitsrenten.

---

BEZIRKSGERICHT DER VEREINIGTEN STAATEN

Östlicher                    Bezirk von        New York

RAJIV GARG,
            Kläger
                            GERICHTLICHE AUFFORDERUNG IN EINER
GEGEN                       ZIVILKLAGE
WINTERTHUR,
            Beklagte.
                            GESCHÄFTSZEICHEN: 07 CV 510

AN: (Name und Anschrift der Beklagten)        (Falls erforderlich, zugestellt durch)
WINTERTHUR                                    The Federal Justice & Police Department
General Guisan Strasse 40                     International Judicial and Extrajudicial Assistance
8401 Winterthur, Schweiz                      Bundesrain 20
                                             3003 Bern, Schweiz

SIE WERDEN HIERMIT AUFGEFORDERT und angewiesen, den ANWALT DES KLÄGERS (Name
und Anschrift)

Weiser & Associates
215 Lexington Ave., 18th Floor
New York, NY 10016

eine Antwort auf die mit dieser gerichtlichen Aufforderung zugestellten Klage einzureichen, und zwar innerhalb von zwanzig (20) Tagen nach Zustellung dieser gerichtlichen Aufforderung an Sie, den Tag der Zustellung nicht eingerechnet. Falls sie es unterlassen, dies zu tun, wird gegen Sie ein Versäumnisurteil im Sinne des Klagebegehrens gefällt werden. Jede Antwort, die Sie den Patienen dieser Klage zustellen, muss beim Geschäftsstellenleiter dieses Gerichts innerhalb einer angemessenen Zeit nach deren Zustellung eingereicht werden.

(Stempel:) **ROBERT C. HEINEMANN**        (Stempel:) **7. FEB 2007**
GESCHÄFTSSTELLENLEITER                     DATUM

Ich per: ) *Sandra Jones*
(i. A.) STELLVERTRETENDE GESCHÄFTSSTELLENLEITERIN

---

BEZIRKSGERICHT DER VEREINIGTEN STAATEN FÜR DEN
ÖSTLICHEN BEZIRK VON NEW YORK
----------------------------------------------------X
                                              Az. der Zivilklage: 0 7 C V 510
RAJIV GARG,
                                              Eingereicht am 2/6/07
            Kläger
                                              **EIDLICH BESTÄTIGTE KLAGE**
gegen
                                              Schwurgerichtsverfahren beantragt
WINTERTHUR,
            Beklagte.
----------------------------------------------------X

Der Kläger RAJIV GARG, vertreten durch seine Anwälte WEISER & ASSOCIATES, erhebt Klage gegen die Beklagte WINTERTHUR und bringt nach bestem Wissen und Unterrichtung Folgendes vor:

**Klagegrund gegen Winterthur**

1.  Dieses Klagebegehren beruht auf dem Employee Retirement Income Security Act von 1974, § 1001 ff. des Titels 29 der offiziellen Sammlung der US-Bundesgesetze (Title 29 U.S.C. § 1001 et seq).

2.  Dass der Kläger am 24. Juni 2005 gegen die vorstehend im Rubrum angeführte Beklagte basierend auf den gleichen hierin angeführten Tatsachen und Vorfällen Klage erhoben hat.

3.  Dass am 18. Januar 2007 die Klage des Klägers gegen die Beklagte vom südlichen Bezirk wegen örtlicher Unzuständigkeit des Gerichts ohne Schaden für die Rechte des Klägers abgewiesen wurde, da das US-Bezirksgericht für den östlichen Bezirk von New York dafür zuständig ist.

4.  Der östliche Bezirk ist für diese Klage zuständig, da der Kläger in diesem Bezirk lebte und sich seine ERISA-Leistungen dort, genauer gesagt, im Verwaltungsbezirk Nassau, verdiente. Ferner hat der Verstoß in diesem Bezirk stattgefunden und die Beklagte befindet sich im östlichen Bezirk.

5.      Zu allen angeführten Zeiten war und ist die Beklagte WINTERTHUR eine gemäß und kraft der Gesetze der Schweiz ordnungsgemäß gegründete und bestehende Gesellschaft, die ihre Hauptgeschäftsstelle in der General Guisan-Strasse 40 in 8401 Winterthur in der Schweiz hat.

6.      Die Beklagte WINTERTHUR ist eine Tochtergesellschaft der Credit Suisse Group.

7.      Die Beklagte WINTERTHUR, geschäftlich tätig als Winterthur-Columna, ist die rechtliche Nachfolgerin der CS First Boston (Europa) AG und derzeit verantwortlich für die durch deren Pension Fund International eingegangenen Verpflichtungen.

8.      Dass ihr bzw. um den März 1994 der Pension Fund International der CS First Boston (Europa) AG die rechtliche Nachfolgerin des Altersvorsorge- und Lebensversicherungsplan (Pension and Life Assurance Scheme) der CS First Boston und verantwortlich für die durch ihn eingegangenen Verpflichtungen wurde.

9.      Dass die Beklagte WINTERTHUR für die Erbringung beruflicher Vorsorgeleistungen für Mitarbeiter der Credit Suisse First Boston verantwortlich ist, die nicht in der Schweiz ansässig sind bzw. arbeiten sowie dafür, diese Mitarbeiter gegen wirtschaftliche Folgen des Alters, der Arbeitsunfähigkeit und des Todes zu versichern.

10.     Dass an allen hierin angeführten Zeiten die vorstehend genannten Pläne ordnungsgemäß gegründete und bestehende „Vorsorgepläne für Mitarbeiter" im Sinne des Employee Retirement Income Security Act von 1974 in 29 U.S.C. § 1001 ff. waren und sind.

11.     Dass der Kläger in bzw. um den Juni 1992 Mitarbeiter der Credit Suisse First Boston Corporation wurde.

12.     Dass der Kläger RAJIV GARG in bzw. um den Juni 1992 Mitglied des Altersvorsorge- und Lebensversicherungsplan (Pension and Life Assurance Scheme) der CS First Boston wurde, dessen Verpflichtungen von der Beklagten WINTERTHUR übernommen wurden. Eine Abschrift der Vorschriften und Bestimmungen dieses Altersvorsorgeplans ist diesem Dokument als Beweisstück „A" beigefügt.

13.     Dass zu allen angeführten Zeiten der Kläger ein berechtigter Teilnehmer mit unverfallbarer Anwartschaft der vorstehenden genannten durch die Beklagte WINTERTHUR verwaltete Alters- und Arbeitsunfähigkeitsvorsorge ist und war.

14.     Dass die Credit Suisse das Arbeitsverhältnis des Klägers durch eine mit 2. September 1999 datierte Vereinbarung mit Wirksamkeit zum 29. Juni 1999 kündigte.

15.     Dass diese Kündigung die Folge der permanenten Arbeitsunfähigkeit des Klägers und die dadurch bedingte Unfähigkeit war, den wesentlichen Funktionen seiner Arbeit nachzukommen.

16.     Dass der Kläger sämtliche Bedingungen und Erfordernisse erfüllte, um Leistungen gemäß dem vorstehend genannten Plan zu erhalten.

17.     Dass der Kläger die Zahlung sämtlicher in diesem vorstehend genannten Altersvorsorgeplan erworbener Ansprüche zeitgerecht beantragte.

18.     Dass die Beklagte den Leistungsanspruch des Klägers unrechtmäßig ablehnte.

19.     Dass das von der Beklagten WINTERTHUR durchgeführte Prüfungsverfahren und die daraus resultierende Ablehnung willkürlich, rechtswidrig, kapriziös, unangemessen, benachteiligend, ein Ermessensmissbrauch, unbegründet durch substanzielle Beweise und unbegründet durch irgendeine sichhaltige Rechtsauslegung waren sowie nicht in gutem Glauben gemacht worden.

20.     Dass die vorstehend genannte Prüfung und Ablehnung die Erfordernisse von 29 U.S.C. § 1133 und 29 C.F.R. § 2560.503-1 nicht erfüllte.

21.     Dass die Beklagte WINTERTHUR es unterließ, den Kläger über die Vorgehensweise in Verbindung mit einem internen Prüfungsverfahren und/oder dessen Bestand in Kenntnis zu setzen, wie es gemäß Employee Retirement Income Security Act von 1974 erforderlich ist.

22.     Dass eine weitere interne Prüfung des Anspruchs des Klägers durch die Beklagte nutzlos wäre.

23.     Dass als direkte und unmittelbare Folge des Fehlverhaltens der Beklagten der Kläger einen Schaden in der Höhe der fälligen Leistungen gemäß dem vorstehend genannten Plan erlitt.

24.     Dass als direkte und unmittelbare Folge des Fehlverhaltens der Beklagten dem Kläger Anwaltsgebühren und Kosten in Verbindung mit dieser Klage entstanden sind.

25.     Daher ersucht der Kläger um ein Urteil gegen die Beklagten (sic) in der Höhe, wie sie ihm gemäß den Bestimmungen des vorstehend genannten Arbeitsfähigkeits- und Altersvorsorgeplans zusteht, zuzüglich der darauf aufgelaufenen Zinsen sowie der Kosten und angemessenen Anwaltshonorare in Verbindung mit dieser Klage und jeglichen anderweitigen Rechtsschutz, wie ihn das Gericht als angemessen und gebührend erachtet.

Datum: New York, New York
         30. Januar 2007


          (ch. gez.:)Jaimee Nardiello
         JAIMEE L. NARDIELLO, ESQ. (3173)
         Weiser & Associates
         Rechtsanwälte des Klägers:
         RAJIV GARG
         Kanzlei- und Postfachanschrift:
         215 Lexington Ave., 18th Floor
         New York, NY 10016
         212-213-3111

---

EIDLICHE ERKLÄRUNG DES MANDANTEN


US-BUNDESSTAAT NEW YORK, BEZIRK NEW YORK ss:


         RAJIV GARG          erklärt nach ordnungsgemäßer Einschwörung Folgendes:

Ich bin Kläger in der vorliegenden Klage; Ich habe die beigefügten Dokumente GERICHTLICHE AUFFORDERUNG UND EIDLICH BESTÄTIGTE KLAGE gelesen und kenne den Inhalt derselben und er entspricht meines Wissens der Wahrheit, mit Ausnahme jener darin enthaltenen Angaben, bezüglich derer festgestellt wird, dass sie auf bestem Wissen und Unterrichtung beruhen und hinsichtlich dieser Angaben glaube ich, dass sie der Wahrheit entsprechen. Meine Annahmen in diesen hierin enthaltenen Angaben, die nicht auf Kenntnissen beruhen, stützen sich auf Tatsachen, Unterlagen und sonstigen sachdienlichen Angaben aus meinen persönlichen Akten.

Datum:   NEW YORK, NEW YORK

         1st FEB          2007


                        (ch. gez.:) RAJIV GARG
         X------------------------------------
                        Rajiv Garg


Vor mir unterschrieben und beschworen
am 1. Februar 2007


(ch. gez.:) Krishna S. Basdeo
ÖFFENTLICHER NOTAR

KRISHNA S BASDEO
ÖFFENTLICHER NOTAR des Bundesstaates New York
Nr. 1BA6011462
Bestellt im Bezirk New York
Bestellung erlicht am 8. Mai 2010

Pension Fund International of
CS First Boston (Europe) AG

# RULES AND
# REGULATIONS

CONTENTS                                                                    page

Article 1 .......................................................................... 4
    Name .......................................................................... 4
Article 2 .......................................................................... 4
    Purpose ....................................................................... 4
Article 3 .......................................................................... 4
    Domicile ...................................................................... 4
Article 4 .......................................................................... 4
    Currency ...................................................................... 4
Article 5 .......................................................................... 4
    Travel ......................................................................... 4
Article 6 .......................................................................... 5
    Relationship to other insurances ............................................ 5
Article 7 .......................................................................... 5
    Overinsurance ................................................................ 5
Article 8 .......................................................................... 6
    Destination of benefits ...................................................... 6
Article 9 .......................................................................... 6
    Bringing in pre-existing vested benefit .................................... 6
Article 10 ......................................................................... 6
    Certificate of insurance ..................................................... 6
Article 11 ......................................................................... 6
    Assignment and pledging of benefit claims .................................. 6
Article 12 ......................................................................... 6
    Assignment of claims in case of liability of a third party ................ 6
Article 13 ......................................................................... 6
    Reduction of benefits ........................................................ 6
Article 14 ......................................................................... 7
    Form of benefits ............................................................. 7
Article 15 ......................................................................... 7
    Improperly received benefits ................................................ 7
Article 16 ......................................................................... 7
    Liability ..................................................................... 7
Article 17 ......................................................................... 7
    Re-insurance ................................................................. 7

MEMBERSHIP ......................................................................... 8
Article 18 ......................................................................... 8
    Principle ..................................................................... 8
Article 19 ......................................................................... 8
    Prerequisites ................................................................ 8
        Entry age ................................................................ 8
        Employment contract/working hours ....................................... 8
        Insurance application .................................................... 8
        Proof of health .......................................................... 8
        Proceedings .............................................................. 8

1

Article 20 ......................................................................... 8
    Beginning of insurance coverage ............................................. 8
        Provisional insurance coverage .......................................... 8
        Definitive insurance coverage ........................................... 8
        Deficient compliance with prescribed proceedings/late compliance ....... 8
        Leave of absence ......................................................... 9
Article 21 ......................................................................... 9
    End of insurance coverage ................................................... 9
Article 22 ......................................................................... 9
    Continued coverage .......................................................... 9
Article 23 ......................................................................... 9
    Reduction of benefits ....................................................... 9
Article 24 ......................................................................... 9
    Duty to inform .............................................................. 9
Article 25 ......................................................................... 10
    Re-entry .................................................................... 10

BENEFITS ........................................................................... 11
Article 26 ......................................................................... 11
    Insurance benefits .......................................................... 11
Article 27 ......................................................................... 11
    Retirement pension .......................................................... 11
        Beginning and end of claim .............................................. 11
        Amount and maximum amount ............................................... 11
        Early retirement ........................................................ 11
        Deferred commencement of pension ........................................ 12
        Retirement of a disabled member ......................................... 12
Article 28 ......................................................................... 12
    Disability pension .......................................................... 12
        Prerequisites ........................................................... 12
        Determination of disability ............................................. 12
        Amount and maximum amount ............................................... 12
        Beginning and end of claim .............................................. 12
        Insurance of continued employment in case of partial disability ........ 12
        Reduction of the disability pension ..................................... 13
        Revision of disability .................................................. 13
Article 29 ......................................................................... 13
    Survivors benefits .......................................................... 13
        Principle ............................................................... 13
        Amount of survivor's pension ............................................ 13
        Competing claimants ..................................................... 13
        Beginning and end of claim .............................................. 14

VESTED BENEFITS .................................................................... 15
Article 30 ......................................................................... 15
    Vesting ..................................................................... 15
        Principle ............................................................... 15
        Amount .................................................................. 15
        Calculation formula for determining the acquired benefits .............. 15
        Method of payment ....................................................... 17

2

ORGANISATION AND ADMINISTRATION .................................................... 18
Article 31 ......................................................................... 18
    Organs of the foundation .................................................... 18
Article 32 ......................................................................... 18
    Board of the foundation ..................................................... 18
Article 33 ......................................................................... 18
    Administration .............................................................. 18

FINANCING .......................................................................... 19
Article 34 ......................................................................... 19
    Employee's contribution ..................................................... 19
Article 35 ......................................................................... 19
    Employer's contribution ..................................................... 19

CONTROLLING ........................................................................ 20
Article 36 ......................................................................... 20
    Auditors .................................................................... 20
Article 37 ......................................................................... 20
    Actuarial audit ............................................................. 20
Article 38 ......................................................................... 20
    Extraordinary events ........................................................ 20
Article 39 ......................................................................... 20
    Supplemental decisions ...................................................... 20
Article 40 ......................................................................... 20
    Supervision ................................................................. 20

FINAL AND TRANSITIONAL PROVISIONS .................................................. 21
Article 41 ......................................................................... 21
    Definitive text ............................................................. 21
Article 42 ......................................................................... 21
    Omissions in regulations .................................................... 21
Article 43 ......................................................................... 21
    Dissolution and liquidation ................................................. 21
Article 44 ......................................................................... 21
    Revision of rules and regulations ........................................... 21
Article 45 ......................................................................... 21
    Enactment ................................................................... 21

3

Article 1

Name

Under the name "Pension Fund International of CS First Boston (Europe) AG" there exists a foundation under Art. 80 ff. of the Swiss Civil Code, established on the 18th of March 1994 by the charter of the foundation.

Article 2

Purpose

The foundation is intended to provide occupational benefits for the employees not residing or working in Switzerland of CS First Boston (Europe) AG (founding company) or closely economically or financially affiliated Swiss companies, and to insure those employees against the economic consequences of age, disability and death.

Article 3

Domicile

The foundation is domiciled at the domicile of the founding company.

Article 4

Currency

The foundation is kept in its entirety in US Dollars. For conversion of denominations other than US Dollar the official conversion rates of CS First Boston (Europe) AG are applicable.

Article 5

Terms

| | |
|---|---|
| Foundation | Pension Fund International of CS First Boston (Europe) AG |
| Founding company | CS First Boston (Europe) AG |
| Employer | company affiliated with the foundation |
| Employee | male or female person with an unlimited employment contract with the employer |
| Member | male or female person insured by the foundation |
| Age | age at 1st of January, with fractions of 6 months or more rounded up to a full year |
| Retirement age | the age at the end of the month of the 60th birthday |
| Attributable years of service | years of employment, rounded up or down to full years, which have been spent in the service of the CS First Boston Group prior to retirement age, fractions of six months or more are rounded up to a full year |
| Determining salary | the agreed upon base salary without any further fringe benefits such as bonus or overtime pay |

4

Insured salary
(for retirement pension only)
- for members before
June 1, 1989:                         the determining salary
- for members after
May 31, 1989:                         the determining salary up to the amount of pound sterling 75'000.-
                                      This amount shall be adjusted according to the limits of the UK
                                      Inland Revenue on the first day of each calendar year.
Entitled pension salary              the maximum insured salary of the last five years before retirement

Article 6

Relationship to other insurances

Benefits of the company accident insurance are taken into account in determining benefits from the foundation.

If benefits of the company accident insurance reach or surpass the benefits of the foundation, the benefits of the foundation are cancelled. If the benefits of the company accident insurance do not reach the level of benefits of the foundation, the foundation will cover the difference. The comparison and the difference will be established with recognized actuarial methods.

Benefits of private insurance will not be taken into account under any circumstances.

Article 7

Overinsurance

If benefits of the foundation together with
        - state retirement/disability and survivor's insurance
        - compulsory accident insurance,
        - insurance for which the company or, on behalf of the company, a foundation has paid premiums,
        - any claims against a liable third party,
        - any earned income of a disabled person
yield an increase of more than 100 % of the last effective determining salary, the benefits of the foundation will be reduced by the excess amount.

The amount of lump sum payments made in lieu of pensions will be determined according to the actuarial tables of the foundation.

The calculation of benefits will be made according to the date of death or, in the case of a disability pension, according to the beginning of the pension.

The board of the foundation may mitigate the decrease of benefits due to inflation.

The foundation may demand from any claimants of death or disability benefits that she/he cedes to the foundation claims that she/he has against liable third parties, up the amount of the benefits the foundation provides.

The foundation may decrease its benefits proportionally if the insured person has caused the death or disability through serious fault, or has resisted employment rehabilitation.
The same holds true for a survivor who is responsible for the death of the insured person through a serious fault.

5

Article 8

Destination of benefits

The benefits of the foundation are destined for support of the claimants. The board of the foundation may decide upon any measures deemed appropriate to secure the purpose of the benefits, in particular withholding benefits, as long as the purpose intended by the foundation appears to be endangered.

Article 9

Bringing in pre-existing vested benefits

Vested benefits from pension funds of former employers may be used to acquire an additional retirement pension and related supplemental benefits.

Article 10

Certificate of insurance

Members receive annually a certificate indicating the amount of insured and supplemental benefits from the pension fund.

Article 11

Assignment and pledging of benefit claims

All claims to the foundation are exclusively for the personal support of the claimants. Claims are both before and after their due date pledgeable only to the extend permitted by law. Benefit claims will pass to survivors of claimants even if survivors have given up their right to inheritance.

Article 12

Assignment of claims in case of liability of a third party

In case of liability of a third party for death or damage to the health of a member, the member or his survivors must assign their claims against such parties (but not their claims for personal satisfaction) to the foundation up to the amount of the benefits provided by the foundation. The foundation may suspend its benefits as long as the assignment is refused.

Article 13

Reduction of benefits

The board of the foundation may reduce or eliminate the benefits of a member or a beneficiary of a pension if
a)   the disability was caused by gross negligence.
b)   an illegal act is taken in connection with the benefits of the foundation that endangers or impairs the interests of the foundation. Such members have claim to return of their own contributions and pre-existing vested benefits plus interest, with reductions made for any benefits already received, risk costs borne by the foundation, and foundation counter-claims.

6

Article 14

Form of benefits

a)   Pension benefits are determined in yearly amounts and as a rule are paid to the claimants in monthly instalments at the end of the month. The instalment for the month in which the claim expires will be fully paid.
b)   The member may demand, as provided in applicable regulations, that part of his retirement pension be paid as a lump sum. The lump sum may not diminish his retirement pension more than 50 %. The member must submit to the board of the foundation a specific written request no later than three years in advance.
c)   In well-founded cases the board of the foundation may, upon request of the member, agree to a lump sum payment in lieu of a pension benefit.

Article 15

Improperly received benefits

If benefits of the foundation have been improperly received, the foundation may request immediate restitution as well as compensate for overpayments by adjustment of future benefits.

Article 16

Liability

Only the assets of the foundation, with the reservation of re-insured benefits with an insurance company, are liable for the obligations of the foundation.

Article 17

Re-insurance

The foundation can re-insure the benefits of the pension funds entirely or partially with an insurance company. Premiums will be paid by the foundation and the foundation will receive all benefits of the reinsurance.

7

# MEMBERSHIP

**Principle**
Entry into the foundation is compulsory for all employees of CS First Boston (Europe) AG and of its client financial or economic affiliates, if these companies are, with the consent of the board of the foundation, affiliated to the foundation.

### Article 19

**Prerequisites**

*Entry age*
Entry will take place on the 1st of January following the 24th birthday or at the beginning of employment, if the employee has reached the age of 24 by the 1st of January of the year.

*Employment contract/working hours*
The employment contract must be for a period longer than 3 months and, in the case of part-time work, the hours worked must be at least 50 % of the customary working hours.

*Entrance application*
The employee applying for entry must fully and truthfully complete the entry application form within one month.

*Proof of health*
The applicant employee must within one month provide evidence of his health through the certificate of a physician chosen by the pension fund. Fees for the medical examination are borne by the employer.

*Proceedings*
The entry application has to be submitted to the foundation within one month.
The examination by the physician chosen by the foundation must take place within the same period.

### Article 20

**Beginning of insurance coverage**

*Provisional insurance coverage*
The applicant employee will have provisional insurance coverage for three months after the beginning of employment, provided the age condition is fulfilled. If, during the period of provisional insurance coverage, an event giving rise to benefits occurs, the foundation can reduce its benefits, if the event is connected with a previously existing illness or health problem.

*Definitive insurance coverage*
If the applicant employee fulfills the prerequisites for entry within the stated period and has not been informed of any reduction of benefits, he will be admitted retroactively to the time of beginning of employment, to the extent the age condition is fulfilled.

*Deficient compliance with prescribed proceedings/late compliance*
If the applicant employee does not fulfil the prerequisites, he is not admitted and the provisional coverage is cancelled.

8

### Article 25

**Re-entry**
Members who leave the foundation and who re-enter employment with the company shall be treated like any new entry.

10

If the prerequisites are fulfilled after the deadline, the board of the foundation will determine the level and starting date of benefits.

No contributions are paid during a leave of absence. Insurance coverage remains for half a year and is then cancelled. At the time that work resumes, contributions of the company that were due during the period of leave of absence must be paid retroactively.

### Article 21

**End of insurance coverage**
Insurance coverage will be cancelled upon the termination of the employment contract if no claim to disability or retirement pension exists.
The same rule applies if part-time working hours are reduced to less than 50 % of customary working hours.
The board of the foundation may, in special cases, permit an employee who has left the company to remain in the foundation.

### Article 22

**Continued coverage**
Identical insured benefits will be provided for 30 days after leaving the company, but no longer than until the beginning of a new employment.

### Article 23

**Reduction of benefits**
The foundation determines within three months after the deadline for submitting the entry application if there is a heightened risk and a reduction of benefits. Reduction of benefits must be communicated to the member in writing.
After a period of five years the reduction will be cancelled if at that time the member enjoys full working capability.

### Article 24

**Duty to inform**
The member and all claimants are required to provide truthfully all necessary information and to submit all required proofs. The members must also, without written request, inform the foundation in writing of all changes in civil states (marriage, death, divorce etc.) and any duties of support assumed by the member. Upon request, pensioners must provide proof that they are alive and disabled persons must provide a certificate from the physician chosen by the foundation.
The foundation refuses all liability for the consequences of violation of these duties and reserves the right to hold liable the responsible person.

9

# BENEFITS

### Article 26

**Insurance benefits**
The foundation insures:
- retirement pensions
- disability pensions
- survivors pensions

### Article 27

**Retirement pension**

*Beginning and end of claim*
Upon reaching the regular retirement age, the member has a claim to a retirement pension. The claim for a retirement pension lapses on the last day of the month of death.

*Amount and maximum amount*
The amount of the yearly retirement pension at the regular retirement age is determined by the following table:

| Applicable years of service | Percent of entitled pension salary |
|---|---|
| 1 | 1.67 |
| 2 | 3.33 |
| 3 | 5.00 |
| 4 | 6.67 |
| 5 | 8.33 |
| 6 | 10.00 |
| 7 | 11.67 |
| 8 | 13.33 |
| 9 | 15.00 |
| 10 | 17.00 |
| 11 | 19.00 |
| 12 | 21.00 |
| 13 | 23.00 |
| 14 | 25.00 |
| 15 | 27.00 |
| 16 | 29.00 |
| 17 | 32.00 |
| 18 | 35.00 |
| 19 | 38.00 |
| 20 | 41.00 |
| 21 | 44.00 |
| 22 | 48.00 |
| 23 | 52.00 |
| 24 | 56.00 |
| 25 and more | 60.00 |

*Early retirement*
A member may seek early retirement following her/his 50th birthday. The member has a claim to a discounted retirement pension starting immediately. The pension is calculated according to actuarial methods.

11

**Deferred commencement of pension**
If, after reaching the regular retirement age, a member is still employed by the company, the board of the foundation may ... to inform ... regarding retirement pension terms including the pension starting date and the amount of pension and risk insurance.

**Retirement of a disabled member**
When a beneficiary of a full disability pension reaches the regular retirement age, she/he receives, from this time on, a retirement pension that will be calculated according to the entitled pension salary in force at the time of the beginning of the disability taking into consideration the total years of service (including years of disability). The amount of the retirement pension may not exceed the amount of the last paid disability pension.

### Article 28

**Disability pension**

**Prerequisites**
Members entirely or partly disabled for health reasons who were insured at the time of commencement of the condition that led to the disability have claim to a disability pension.

**Determination of disability**
The board of the foundation makes all determinations as to disability. Its decision is based upon an expert opinion of the physician chosen by the foundation.
A full disability is assumed if a member is at least 2/3 disabled. A partial disability of less than 1/4 will not be considered a disability for benefit purposes.
If a member refuses the physician's examination ordered by the board of the foundation, the foundation may suspend benefits.

**Amount and maximum amount**
The full year disability pension is equal to 75 % of the determining yearly salary up to a salary amount of Pound Sterling 107'000.-- or equivalent in US Dollar and 22.5 % of the excess salary amount.

The maximum amount of the yearly disability pension is Pound Sterling 150'000.-- or equivalent in US Dollar.

Any public disability benefits are deducted from the benefit of the foundation.

In case of partial disability, benefits are reduced according to the degree of remaining ability.

**Beginning and end of claim**
The disability pension becomes due as soon as the employer reduces the member's salary due to continuous disability. It is payable until the cessation of disability or until the date of regular retirement age, whichever comes first. At this time the disability pension will be replaced by a retirement pension according to art. 27, paragraph 5.

**Insurance of continued employment in case of partial disability**
If a partially disabled person continues to be employed by the company, the foundation will continue to insure the reduced salary.
The partially disabled employee will be treated as two employees, one fully disabled and one fully employed.

12

---

**Reduction of the disability pension**
... entitled to inform the foundation of any regularly earned income. If, upon ... provided ... over ...

**Revision of disability**
In case of change in the degree of disability, the disability pension may be re-determined or cancelled.
The disability pensioner is required to inform the foundation immediately of any changes in the degree of his disability.

### Article 29

**Survivors benefits**

**Principle**
In case of death of a member, of a beneficiary of a disability pension or a retirement pension, the following persons have a claim to a survivor's pension:
a) a wife sharing a common household with minor children,
b) a disabled wife,
c) a wife, even if a common household no longer exists due to health reasons or infirmity of age,
d) a wife sharing a common household with the member, if at the time of death the member and wife have been married for more than 5 years, the wife is 35 years or older, her income is smaller than that of the deceased member and her income from all sources is less than Pound Sterling 107'000.--
e) If the surviving wife has permanently abandoned the common household, the board of the foundation may determine in its free judgement an amount of survivor's pension payable to the wife so that the pension amount corresponds to the amount necessary to the support of the wife from the member's earned income for the years preceding his death. In no case can this amount exceed the sum of a full survivor's pension.
f) In case of surviving partners and husbands, who were in a documented way significantly assisted by the deceased member, the board of the foundation can, after careful consideration of all personal circumstances and any written statement of the member, treat those persons on equal terms as the wife under paragraphs a) to c).

**Amount of survivor's pension**
In case of death of a member before the regular retirement age, or, in case of premature retirement, before beginning of pension payments, a survivor's benefit equal to seven times the determining salary becomes due. Of that sum, an amount equal to four times the determining salary will be paid as a lump sum.
The remainder will be converted to a survivor's pension.
In case of death after the beginning of pension payments, if the pension has been paid for fewer than five years, the lump sum will be reduced according to the number of years for which benefits were payable. An additional survivor's pension of 50 % of the retirement pension paid to the member will be paid.

**Competing claimants**
The board of the foundation will decide between competing claimants pursuant to the principles of paragraph a) to f) above.

13

---

**Beginning and end of claim**
The survivor's pension starts on the month following the death of the member. The pension ceases upon the first of the following events:
a) remarriage
b) entering into a long-term life partnership
c) death of the claimant

14

---

## VESTED BENEFITS

### Article 30

**Vesting**

**Principle**
If the employment of a member ceases for reasons other than age, retirement, disability or death, vested benefits are due.

If the employment terminates prior to two full years of service, no claim to vested benefits exists other than for benefits acquired by pre-existing vested benefits brought in.

**Amount**
The amount of vested benefits is determined according to:
a) the present value of the acquired benefits and
b) the actuarially calculated present value of the bought benefits by pre-existing vested benefits brought in.

Vested benefits are in all cases at least as high as the actuarially calculated present value of the pre-existing vested benefits brought in.

**Calculation formula for determining the acquired benefits**

| acquired benefits at normal retirement date | × | attainable years of service |
|---|---|---|
| | | potential years of service until normal retirement age. |

The present value of acquired benefits is determined by multiplying the amount of the acquired benefits with the appropriate present value factor of the following table:

15

| Male Age | | Female | |
|---|---|---|---|
| 20 | 2.273 | 20 | 2.397 |
| 21 | 2.380 | 21 | 2.507 |
| 22 | 2.489 | 22 | 2.619 |
| 23 | 2.605 | 23 | 2.739 |
| 24 | 2.725 | 24 | 2.863 |
| 25 | 2.849 | 25 | 2.994 |
| 26 | 2.979 | 26 | 3.130 |
| 27 | 3.116 | 27 | 3.271 |
| 28 | 3.260 | 28 | 3.419 |
| 29 | 3.409 | 29 | 3.573 |
| 30 | 3.565 | 30 | 3.738 |
| 31 | 3.729 | 31 | 3.908 |
| 32 | 3.900 | 32 | 4.086 |
| 33 | 4.079 | 33 | 4.271 |
| 34 | 4.266 | 34 | 4.465 |
| 35 | 4.462 | 35 | 4.670 |
| 36 | 4.668 | 36 | 4.882 |
| 37 | 4.883 | 37 | 5.105 |
| 38 | 5.108 | 38 | 5.339 |
| 39 | 5.344 | 39 | 5.583 |
| 40 | 5.591 | 40 | 5.840 |
| 41 | 5.850 | 41 | 6.110 |
| 42 | 6.123 | 42 | 6.392 |
| 43 | 6.408 | 43 | 6.688 |
| 44 | 6.708 | 44 | 6.997 |
| 45 | 7.024 | 45 | 7.322 |
| 46 | 7.355 | 46 | 7.663 |
| 47 | 7.705 | 47 | 8.019 |
| 48 | 8.073 | 48 | 8.394 |
| 49 | 8.461 | 49 | 8.787 |
| 50 | 8.871 | 50 | 9.200 |
| 51 | 9.305 | 51 | 9.635 |
| 52 | 9.764 | 52 | 10.092 |
| 53 | 10.249 | 53 | 10.573 |
| 54 | 10.763 | 54 | 11.081 |
| 55 | 11.311 | 55 | 11.615 |
| 56 | 11.893 | 56 | 12.180 |
| 57 | 12.512 | 57 | 12.777 |
| 58 | 13.174 | 58 | 13.410 |
| 59 | 13.879 | 59 | 14.079 |
| 60 | 14.634 | 60 | 14.772 |

Method of payment
... and no such insurance exists, are maintained in the form of a vested policy or dissolved ...

If the departing member demands another form of payment she/he must present a specific written request, together with proof that the legal requirements for such payments are met.

## ORGANISATION AND ADMINISTRATION

Organs of the foundation

### Article 31

The organs of the foundation are the board of trustees of the foundation and the administration.

Board of the foundation

### Article 32

The board of the foundation is composed of three to five members which, with the reservation of Art. 89bis, paragraph 3, ZGB, are appointed by the founding company.

The president of the board of the foundation is designated by the board of directors of the founding company. The board of the foundation otherwise sets itself up and determines its own form. It designates the persons who represent the foundation and sign for it.

The period of office is two years. Re-election is admitted. Members automatically cease being on the board of the foundation as soon as their employment contract ends. The members replacing them are elected for the remaining period of office of their predecessors.

The board of the foundation is competent to act if a majority of its members are present. Decisions must be approved by a majority of those present. In case of equality of votes, the president gives the casting vote.

Minutes will be kept of each meeting of the board of the foundation and must be signed by the president and by the secretary of the board of the foundation. Decisions may also be made in writing without a meeting of the board provided that no member of the board requests a meeting in person.

The members of the board of the foundation and their delegates are subject to a duty of strict confidence as to knowledge acquired regarding the personal circumstances of the insured members and the business affairs of the founding company and the affiliated employers.

Administration

### Article 33

The board of the foundation may, within its own responsibilities, delegate the administration of ongoing affairs, especially bookkeeping and customary business with members and beneficiaries, to a manager. The manager is responsible to the board of the foundation.

The manager takes care of:
- ongoing business affairs
- correspondence with members, beneficiaries of pensions and claimants
- the issuing of yearly balance statements and activity reports.

The manager is authorised to handle all cases according to the current regulations. He participates at the sessions of the board of the foundation in an advisory capacity and writes the minutes.

## FINANCING

Employer's contribution

### Article 34

The employer contributes the amount needed to finance the necessary actuarial reserves and the cost of risk insurance.

Employee's contribution

### Article 35

Employees are exempt from contributions.

CONTROLLING

**Article 36**

Auditors
The auditors are appointed by the board of the foundation. They examine yearly the correctness of the business management, accounts and investment of assets. The report of the auditors shall be reviewed and approved by the board of the foundation and presented to the supervisory authority. The period of office is one year. Re-election is allowed.

**Article 37**

Actuarial audit
The board of the foundation will organize at least every two years an actuarial audit of the foundation by a recognized expert. The actuarial report is to be submitted to the supervisory authority.

If such an audit reveals a deficiency in one of the pension funds, the board of the foundation will decide upon appropriate measures to be taken, based upon the proposals of recognized experts for occupational benefits.

**Article 38**

Extraordinary events
If the board of the foundation discovers that, because of extraordinary events such as war, epidemics, loss of foundation assets etc., a major change in the actuarial basis for the insurance has occurred or will occur, it is authorized, in agreement with the founding company, to reduce immediately future benefits as well as current pensions on a provisional basis.

The provisional benefits replace the regulatory benefits until the regulations have been revised on the basis of an actuarial audit undertaken within a reasonable time.

**Article 39**

Supplemental decisions
The board of the foundation is authorized to make decisions concerning cases not specifically covered by the regulations in its free judgement within the context and purpose of the regulations.

**Article 40**

Supervision
The foundation is under supervision as required by law.

FINAL AND TRANSITIONAL PROVISIONS

**Article 41**

Definitive text
The German text of these rules is definitive.

**Article 42**

Omissions in regulations
In cases where an applicable provision can be found in the regulations, the board of the foundation will make decisions based upon the purpose of the foundation.

**Article 43**

Dissolution and liquidation
In case of merger of the founding company or its dissolution and passage to a legal successor the foundation follows the founding company.

In case of liquidation of the founding company, the foundation will continue to exist, without opposition decision of the board of the foundation, as long as any claimants are living.

In case of complete or partial liquidation of the foundation the assets of the foundation shall be used for the benefit of the claimants according to a plan authorized by the supervisory authority.

Restitution of foundation assets to the founding company or affiliated companies or their legal successors is not permitted.

**Article 44**

Revision of rules and regulations
The board of the foundation can - in context with the founding company and within the rules of the cluster of the foundations - amend the rules and regulations within the legal framework. The up to the date of the amendment of the rules and regulation accumulated capital must be preserved for occupational welfare benefits of the members.

**Article 45**

Enactment
The regulations dated December 31, 1993 are accepted by the board of the foundation and are enacted the first of January, 1994.

Two copies of rules and regulations are to be submitted to the supervisory authority.

Zug, December 31, 1993

Affidavit Certifying Accuracy of Translation

STATE OF NEW YORK }
                   } ss:
COUNTY OF NEW YORK }

Waltraud Maria Raninger, being duly sworn, does depose and say:

1. That she has carefully made the attached translations from the English documents, that are, Summons in a Civil Action, Case No. 07 CV 510, Verified Complaint, Civil Action No. 07 CV 510, and Client Verification of Rajiv Garg, consisting in total of 6 pages.

2. That she is a translator by profession (completed Translation and Interpreting Studies at the Karl-Franzens-Universität, Graz, Austria; degree received Mag.phil.)

3. That she is thoroughly familiar with both the German and the English languages (Certificate in Translation from New York University).

4. That the attached translation is a true, accurate and complete German translation of the English originals to the best of her knowledge, ability and belief.

Waltraud Raninger

Subscribed and sworn to
before me this 5th day of April, 2007

Notary Public

AO 440 (Rev. 8/01) Summons in a Civil Action

## UNITED STATES DISTRICT COURT

Eastern    District of    New York

RAJIV GARG,
    Plaintiff,

v.

WINTERTHUR,
    Defendant.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER: 07 CV 510

TO: (Name and address of defendant)

WINTERTHUR    (To be served, if necessary, through)
General Guisan Strasse, 49    The Federal Justice & Police Department
8401 Winterthur, Switzerland    International Judicial and Extrajudicial
   Assistance
   Bundesrain 20
   3003 Bern, Switzerland

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Weiser & Associates
215 Lexington Ave., 18th Floor
New York, NY 10016

an answer to the complaint which is served on you with this summons, within _____Twenty (20)_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

ROBERT C. HEINEMANN     FEB 07 2007

CLERK     DATE

(BY) DEPUTY CLERK

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK    Civil Action No: 07 CV 510
-----------------------------------------------------------------X
RAJIV GARG,

    Plaintiff,     Filed: 2/6/07

-against-     **VERIFIED COMPLAINT**

WINTERTHUR,     Jury Trial Demanded

    Defendant.
-----------------------------------------------------------------X

The Plaintiff, RAJIV GARG, by his attorneys, WEISER & ASSOCIATES, complains against the defendant, WINTERTHUR, stating upon information and belief:

**As and For a Cause of Action against Winterthur**

1. This claim arises under the Employee Retirement Income Security Act of 1974, Title 29 U.S.C. Section § 1001 et seq.

2. That on June 24, 2005 plaintiff commenced an action against the above captioned defendant in the United States District Court for the Southern District of New York based upon the same facts and occurrences alleged herein.

3. That on January 18, 2007, plaintiff's action against defendant was dismissed without prejudice from the Southern District for improper venue, as the proper venue is the United States District Court for the Eastern District of New York.

4. The Eastern District is the proper venue for this action because plaintiff lived in and earned his ERISA benefits in this district, specifically, in the County of Nassau. Furthermore, the breach took place in this district and the defendant may be found in the Eastern District.

---

5. At all times mentioned, the defendant, WINTERTHUR, was and is a duly organized and existing corporation chartered under and by virtue of the laws of Switzerland, with its principal place of business at General Guisan-Strasse 40, 8401 Winterthur, Switzerland.

6. The defendant, WINTERTHUR, is a subsidiary of Credit Suisse Group.

7. The defendant, WINTERTHUR, doing business as Winterthur-Columna, is the legal successor of and is currently responsible for the obligations incurred by Pension Fund International of CS First Boston (Europe) AG.

8. That on or about March of 1994, Pension Fund International of CS First Boston (Europe) AG, became the legal successor of and responsible for the obligations incurred by CS First Boston Pension and Life Assurance Scheme.

9. That the defendant, WINTERTHUR, is responsible for providing occupational benefits for the employees of Credit Suisse First Boston not residing or working in Switzerland and to insure those employees against the economic consequences of age, disability and death.

10. At all times herein mentioned, the above mentioned plans were and are duly organized and existing "employee benefits plans" as defined by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

11. That plaintiff became an employee of Credit Suisse First Boston Corporation on or about June 1992.

12. That on or about June 1992 the plaintiff, RAJIV GARG, became a member of CS First Boston Pension and Life Assurance Scheme, the obligations of which have been assumed by the defendant, WINTERTHUR. A copy of the Rules and Regulations of this pension plan are annexed hereto as Exhibit "A".

---

13. That at all times mentioned, the plaintiff is and was a qualified and vested participant in the above mentioned pension and disability plan, administered by the defendant, WINTERTHUR.

14. That by agreement dated September 2, 1999, Credit Suisse terminated the plaintiff's employment with an effective date of termination as June 29, 1999.

15. That this termination was the result of the plaintiff's permanent disability and the related inability to perform the essential functions of his employment.

16. That the plaintiff has complied with all conditions and requirements so as to receive benefits under the abovementioned plan.

17. That the plaintiff timely requested payment of all benefits accrued in the abovementioned pension plan.

18. That the defendant wrongfully denied plaintiff's claim for benefits.

19. That the evaluation process undertaken by defendant, WINTERTHUR, and the resulting denial, were arbitrary, illegal, capricious, unreasonable, discriminatory, an abuse of discretion, unsupported by any substantial evidence, unsupported by any sound interpretation of the law, and not made in good faith.

20. That the above mentioned evaluation and denial failed to comply with the requirements of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1.

21. That the defendant, WINTERTHUR, failed to inform the plaintiff regarding the procedures associated with and/or the existence of an internal review procedure as required under the Employee Retirement Income Security Act of 1974.

22. That further internal review of the plaintiff's claim by the defendant would be futile.

23. That as a direct and proximate result of defendant's misconduct, the plaintiff has sustained

damages in the amount of benefits then due, together with the applicable attorneys fees

24.     That as a direct and proximate result of the defendants' misconduct , the plaintiff has

incurred the attorney's fees and costs associated with this action.

Wherefore, the plaintiff seeks judgment against the defendants in the amount owed under

the provisions of the aforementioned disability and pension plan, with interest accrued thereof, as

well as the costs and reasonable attorneys fees associated with this action along with all other relief

as the court deems just and proper.

Dated: New York, New York
January 30, 2007

*Jaimee Nardiello*
JAIMEE L. NARDIELLO, ESQ. (3173)
Weiser & Associates
Attorneys for Plaintiff:
RAJIV GARG
Office & P.O. Address:
215 Lexington Ave., 18th Floor
New York, NY 10016
212-213-3111

CLIENT VERIFICATION

STATE OF NEW YORK, COUNTY OF NEW YORK ss:

RAJIV GARG          , being duly sworn, says:

I am a Plaintiff in the action herein:  I have read the annexed

SUMMONS AND VERIFIED COMPLAINT

and know the contents thereof, and the same are true to my knowledge, except those matters

therein which are stated to be allegued upon information and belief, and as to those matters I believe

them to be true. My belief as to those matters therein not stated upon knowledge, is based upon

facts, records, and other pertinent information contained in my personal files.

Dated:     NEW YORK, NEW YORK
1st FEB        , 2007

X *Rajiv Garg*
Rajiv Garg

Subscribed and sworn to before me
this 1 day of february 2007

*Krishna S. Basdeo*
NOTARY PUBLIC
KRISHNA S. BASDEO
NOTARY PUBLIC, State of New York
No. 01BA6041462
Qualified in New York County
Commission Expires May 08, 2011

---

Pension Fund International of
CS First Boston (Europe) AG

# RULES AND
# REGULATIONS

*CONTENTS*                                                              page
GENERAL RULES ................................................................... 4
    Article 1 ...................................................................... 4
        Name ..................................................................... 4
    Article 2 ...................................................................... 4
        Purpose .................................................................. 4
    Article 3 ...................................................................... 4
        Domicile ................................................................. 4
    Article 4 ...................................................................... 4
        Currency ................................................................. 4
    Article 5 ...................................................................... 4
        Terms .................................................................... 4
    Article 6 ...................................................................... 5
        Relationship to other insurances ...................................... 5
    Article 7 ...................................................................... 5
        Overinsurance ........................................................... 5
    Article 8 ...................................................................... 6
        Destination of benefits ................................................. 6
    Article 9 ...................................................................... 6
        Bringing in pre-existing vested benefits .............................. 6
    Article 10 ..................................................................... 6
        Certificate of insurance ................................................ 6
    Article 11 ..................................................................... 6
        Assignment and pledging of benefit claims ............................ 6
    Article 12 ..................................................................... 6
        Assignment of claims in case of liability of a third party ........... 6
    Article 13 ..................................................................... 6
        Reduction of benefits ................................................... 6
    Article 14 ..................................................................... 7
        Form of benefits ........................................................ 7
    Article 15 ..................................................................... 7
        Improperly received benefits ........................................... 7
    Article 16 ..................................................................... 7
        Liability ................................................................. 7
    Article 17 ..................................................................... 7
        Re-insurance ............................................................. 7

MEMBERSHIP ..................................................................... 8
    Article 18 ..................................................................... 8
        Principle ................................................................. 8
    Article 19 ..................................................................... 8
        Prerequisites ............................................................ 8
            Entry age ............................................................ 8
            Employment contract/working hours .................................. 8
            Entrance application ................................................ 8
            Proof of health ..................................................... 8
            Proceedings .......................................................... 8

1

Article 20 ........................................................................... 8
Beginning of insurance coverage .............................................. 8
Acceptance of insurance ............................................................. 8
Definitive insurance coverage ...................................................... 8
Deficient compliance with prescribed proceedings/state compliance ..... 8
Leave of absence .......................................................................... 9
Article 21 ........................................................................... 9
End of insurance coverage ............................................................ 9
Article 22 ........................................................................... 9
Continued coverage ...................................................................... 9
Article 23 ........................................................................... 9
Reduction of benefits ................................................................... 9
Article 24 ........................................................................... 9
Duty to inform ............................................................................. 10
Article 25 ........................................................................... 10
Re-entry ...................................................................................... 10

BENEFITS ......................................................................... 11
Article 26 ........................................................................... 11
Insurance benefits ........................................................................ 11
Article 27 ........................................................................... 11
Retirement pension ...................................................................... 11
Beginning and end of claim ......................................................... 11
Amount and maximum amount ...................................................... 11
Early retirement ............................................................................ 11
Deferred commencement of pension .............................................. 12
Retirement of a disabled member .................................................. 12
Article 28 ........................................................................... 12
Disability pension ........................................................................ 12
Prerequisites ................................................................................ 12
Determination of disability ........................................................... 12
Amount and maximum amount ...................................................... 12
Beginning and end of claim ......................................................... 12
Insurance of continued employment in case of partial disability ...... 12
Reduction of the disability pension ............................................... 13
Revision of disability ................................................................... 13
Article 29 ........................................................................... 13
Survivors benefits ........................................................................ 13
Principle ...................................................................................... 13
Amount of survivor's pension ....................................................... 13
Competing claimants .................................................................... 13
Beginning and end of claim ......................................................... 14

VESTED BENEFITS ........................................................... 15
Article 30 ........................................................................... 15
Vesting ........................................................................................ 15
Principle ...................................................................................... 15
Amount ....................................................................................... 15
Calculation formula for determining the acquired benefits ............. 15
Method of payment ...................................................................... 17

ORGANISATION AND ADMINISTRATION ......................... 18
Article 32 ........................................................................... 18
Board of the foundation ............................................................... 18
Article 33 ........................................................................... 18
Administration ............................................................................. 18

FINANCING ....................................................................... 19
Article 34 ........................................................................... 19
Employer's contribution ............................................................... 19
Article 35 ........................................................................... 19
Employee's contribution ............................................................... 19

CONTROLLING .................................................................. 20
Article 36 ........................................................................... 20
Auditors ...................................................................................... 20
Article 37 ........................................................................... 20
Actuarial audit ............................................................................. 20
Article 38 ........................................................................... 20
Extraordinary events .................................................................... 20
Article 39 ........................................................................... 20
Supplemental decisions ................................................................ 20
Article 40 ........................................................................... 20
Supervision .................................................................................. 20

FINAL AND TRANSITIONAL PROVISIONS ....................... 21
Article 41 ........................................................................... 21
Definitive text .............................................................................. 21
Article 42 ........................................................................... 21
Questions in regulations ............................................................... 21
Article 43 ........................................................................... 21
Dissolution and liquidation ........................................................... 21
Article 44 ........................................................................... 21
Revision of rules and regulations .................................................. 21
Article 45 ........................................................................... 21
Enactment .................................................................................... 21

GENERAL RULES

### Article 1

Name

Under the name "Pension Fund International of CS First Boston (Europe) AG" there exists a foundation under Art. 80 ff. of the Swiss Civil Code, established on the 18th of March 1994 by the charter of the foundation.

### Article 2

Purpose

The foundation is intended to provide occupational benefits for the employees not residing or working in Switzerland of CS First Boston (Europe) AG (founding company) or closely economically or financially affiliated Swiss companies, and to insure those employees against the economic consequences of age, disability and death.

### Article 3

Domicile

The foundation is domiciled at the domicile of the founding company.

### Article 4

Currency

The foundation is kept in its entirety in US Dollars. For conversion of denominations other than US Dollar the official conversion rates of CS First Boston (Europe) AG are applicable.

### Article 5

Terms

| Foundation | Pension Fund International of CS First Boston (Europe) AG |
| Founding company | CS First Boston (Europe) AG |
| Employer | company affiliated with the foundation |
| Employee | male or female person with an unlimited employment contract with the employer |
| Member | male or female person insured by the foundation |
| Age | age at 1st of January, with fractions of 6 months or more rounded up to a full year |
| Retirement age | the age at the end of the month of the 60th birthday |
| Attributable years of service | years of employment, rounded up or down to full years, which have been spent in the service of the CS First Boston Group prior to retirement age, fractions of six months or more are rounded up to a full year |
| Determining salary | the agreed upon base salary without any further fringe benefits such as bonus or overtime pay |

| Insured salary (for retirement pension only) | |
| - for members below June 1, 1989 | the determining salary |
| - for members after May 31, 1989: | the determining salary up to the amount of pound sterling 75'000.- This amount shall be adjusted according to the limits of the UK. Inland Revenue on the first day of each calendar year. |
| Entitled pension salary | the maximum insured salary of the last five years before retirement |

### Article 6

Relationship to other insurances

Benefits of the company accident insurance are taken into account in determining benefits from the foundation.

If benefits of the company accident insurance reach or surpass the benefits of the foundation, the benefits of the foundation are cancelled. If the benefits of the company accident insurance do not reach the level of benefits of the foundation, the foundation will cover the difference. The comparison and the difference will be established with recognized actuarial methods.

Benefits of private insurance will not be taken into account under any circumstances.

### Article 7

Overinsurance

If benefits of the foundation together with
- state retirement/disability and survivor's insurance
- compulsory accident insurance,
- insurance for which the company or, on behalf of the company, a foundation has paid premiums,
- any claims against a liable third party,
- any earned income of a disabled person
yield an income of more than 100 % of the last effective determining salary, the benefits of the foundation will be reduced by the excess amount.

The amount of lump sum payments made in lieu of pensions will be determined according to the actuarial tables of the foundation.

The calculation of benefits will be made according to the date of death or, in the case of a disability pension, according to the beginning of the pension.

The board of the foundation may mitigate the decrease of benefits due to inflation.

The foundation may demand from any claimants of death or disability benefits that she/he cedes to the foundation claims that she/he has against liable third parties, up the amount of the benefits the foundation provides.

The foundation may decrease its benefits proportionally if the insured person has caused the death or disability through serious fault, or has resumed employment rehabilitation.

The same holds true for a survivor who is responsible for the death of the insured person through a serious fault.

## Article 8
**Destination of benefits**

The benefits of the foundation are intended for support of the claimants. The board of the foundation may decide upon any measures intended to protect this in case of the misuse of benefits or withholding benefits, as long as the purpose intended by the foundation appears to be endangered.

## Article 9
**Bringing in pre-existing vested benefits**

Vested benefits from pension funds of former employers may be used to acquire an additional retirement pension and related supplemental pensions.

## Article 10
**Certificate of insurance**

Members receive annually a certificate indicating the amount of insured and supplemental benefits from the pension fund.

## Article 11
**Assignment and pledging of benefit claims**

All claims to the foundation are exclusively for the personal support of the claimants. Claims are both before and after their due date pledgeable only to the extent permitted by law. Benefit claims will pass to survivors of claimants even if survivors have given up their right to inheritance.

## Article 12
**Assignment of claims in case of liability of a third party**

In case of liability of a third party for death or damage to the health of a member, the member or his survivors must assign their claims against such parties (but not their claims for personal satisfaction) to the foundation up to the amount of the benefits provided by the foundation. The foundation may suspend its benefits as long as the assignment is refused.

## Article 13
**Reduction of benefits**

The board of the foundation may reduce or eliminate the benefits of a member or a beneficiary of a pension if
a) the disability was caused by gross negligence,
b) an illegal act is taken in connection with the benefits of the foundation that endangers or impairs the interests of the foundation. Such members have claim to return of their own contributions and pre-existing vested benefits plus interest, with reductions made for any benefits already received, risk costs borne by the foundation, and foundation counter-claims.

6

## Article 14

monthly instalments at the end of the month. The instalment for the month in which the claim expires will be fully paid.
b) The member may demand, as provided in applicable regulations, that part of his retirement pension be paid as a lump sum. The lump sum may not diminish his retirement pension more than 50 %. The member must submit to the board of the foundation a specific written request no later than three years in advance.
c) In well-founded cases the board of the foundation may, upon request of the member, agree to a lump sum payment in lieu of a pension benefit.

## Article 15
**Improperly received benefits**

If benefits of the foundation have been improperly received, the foundation may request immediate restitution as well as compensate for overpayment by adjustment of future benefits.

## Article 16
**Liability**

Only the assets of the foundation, with the reservation of re-insured benefits with an insurance company, are liable for the obligations of the foundation.

## Article 17
**Re-insurance**

The foundation can re-insure the benefits of the pension funds entirely or partially with an insurance company. Premiums will be paid by the foundation and the foundation will receive all benefits of the reinsurance.

7

# MEMBERSHIP

## Article 18
**Principle**

Entry into the foundation is compulsory for all employees of CS First Boston (Europe) AG and of its close financial or economic affiliates, if these companies are, with the consent of the board of the foundation, affiliated to the foundation.

## Article 19
**Prerequisites**

*Entry age*
Entry will take place on the 1st of January following the 24th birthday or at the beginning of employment, if the employee has reached the age of 24 by the 1st of January of the year.

*Employment contract/working hours*
The employment contract must be for a period longer than 3 months and, in the case of part-time work, the hours worked must be at least 50 % of the customary working hours.

*Entrance application*
The employee applying for entry must fully and truthfully complete the entry application form within one month.

*Proof of health*
The applicant employee must within one month provide evidence of his health through the certificate of a physician chosen by the pension fund. Fees for the medical examination are borne by the employer.

*Procedures*
The entry application has to be submitted to the foundation within one month.
The examination by the physician chosen by the foundation must take place within the same period.

## Article 20
**Beginning of insurance coverage**

*Provisional insurance coverage*
The applicant employee will have provisional insurance coverage for three months after the beginning of employment, provided the age condition is fulfilled. If, during the period of provisional insurance coverage, an event giving rise to benefits occurs, the foundation can reduce its benefits, if the event is connected with a previously existing illness or health problem.

*Definitive insurance coverage*
If the applicant employee fulfils the prerequisites for entry within the stated period and has not been informed of any reduction of benefits, he will be admitted retroactively to the time of beginning of employment, to the extent the age condition is fulfilled.

*Deficient compliance with prescribed proceedings/late compliance*
If the applicant employee does not fulfil the prerequisites, he is not admitted and the provisional coverage is cancelled.

8

If the prerequisites are fulfilled after the deadline, the board of the foundation will determine the level and starting date of benefits.

*Leave of absence*
No contributions are paid during a leave of absence. Insurance coverage remains for half a year and is then cancelled. At the time that work resumes, contributions of the company that were due during the period of leave of absence must be paid retroactively.

## Article 21
**End of insurance coverage**

Insurance coverage will be cancelled upon the termination of the employment contract if no claim to disability or retirement pension exists.
The same rule applies if part-time working hours are reduced to less than 50 % of customary working hours.
The board of the foundation may, in special cases, permit an employee who has left the company to remain in the foundation.

## Article 22
**Continued coverage**

Identical insured benefits will be provided for 30 days after leaving the company, but no longer than until the beginning of a new employment.

## Article 23
**Reduction of benefits**

The foundation determines within three months after the deadline for submitting the entry application if there is a heightened risk and a reduction of benefits. Reduction of benefits must be communicated to the member in writing.
After a period of five years the reduction will be cancelled if at that time the member enjoys full working capability.

## Article 24
**Duty to inform**

The member and all claimants are required to provide truthfully all necessary information and to submit all required proofs. The members must also, without written request, inform the foundation in writing of all changes in civil status (marriage, death, divorce etc.) and any duties of support assumed by the member. Upon request, pensioners must provide proof that they are alive and disabled persons must provide a certificate from the physician chosen by the foundation.
The foundation refuses all liability for the consequences of violation of these duties and reserves the right to hold liable the responsible person.

9

Article 25

Re-entry
Members who ... ... ... ... ... like any new entry.

10

BENEFITS

Article 26

Insurance benefits
  The foundation insures:
    - retirement pensions
    - disability pensions
    - survivors pensions

Article 27

Retirement pension
  Beginning and end of claim
  Upon reaching the regular retirement age, the member has a claim to a retirement pension. The claim for a retirement pension lapses on the last day of the month of death.

  Amount and maximum amount
  The amount of the yearly retirement pension at the regular retirement age is determined by the following table:

| Applicable years of service | Percent of entitled pension salary |
|---|---|
| 1 | 1,67 |
| 2 | 3,33 |
| 3 | 5,00 |
| 4 | 6,67 |
| 5 | 8,33 |
| 6 | 10,00 |
| 7 | 11,67 |
| 8 | 13,33 |
| 9 | 15,00 |
| 10 | 17,00 |
| 11 | 19,00 |
| 12 | 21,00 |
| 13 | 23,00 |
| 14 | 25,00 |
| 15 | 27,00 |
| 16 | 29,00 |
| 17 | 32,00 |
| 18 | 35,00 |
| 19 | 38,00 |
| 20 | 41,00 |
| 21 | 44,00 |
| 22 | 48,00 |
| 23 | 52,00 |
| 24 | 56,00 |
| 25 and more | 60,00 |

  Early retirement
  A member may seek early retirement following her/his 50th birthday. The member has a claim to a diminished retirement pension starting immediately. The pension will be calculated according to actuarial methods.

11

Deferred commencement of pension
If, after reaching the regular retirement age, a member is still employed by the company, the board of the foundation may, in agreement with the employer, establish a written agreement with the member, regarding retirement pension terms including the pension starting date and the amount of pension and risk insurance.

Retirement of a disabled member
When a beneficiary of a full disability pension reaches the regular retirement age, she/he receives, from this time on, a retirement pension that will be calculated according to the entitled pension salary in force at the time of the beginning of the disability taking into consideration the total years of service (including years of disability). The amount of the retirement pension may not exceed the amount of the last paid disability pension.

Article 28

Disability pension
  Prerequisites
  Members entirely or partly disabled for health reasons who were insured at the time of commencement of the condition that led to the disability have claim to a disability pension.

  Determination of disability
  The board of the foundation makes all determinations as to disability. Its decision is based upon an expert opinion of the physician chosen by the foundation.
  A full disability is assumed if a member is at least 2/3 disabled. A partial disability of less than 1/4 will not be considered a disability for benefits purposes.
  If a member refuses the physician's examination ordered by the board of the foundation, the foundation may suspend benefits.

  Amount and maximum amount
  The full year disability pension is equal to 75 % of the determining yearly salary up to a salary amount of Pound Sterling 107'000.-- or equivalent in US Dollar and 22.5 % of the excess salary amount.

  The maximum amount of the yearly disability pension is Pound Sterling 150'000.-- or equivalent in US Dollar.

  Any public disability benefits are deducted from the benefits of the foundation.

  In case of partial disability, benefits are reduced according to the degree of remaining ability.

  Beginning and end of claim
  The disability pension becomes due as soon as the employer reduces the member's salary due to continuous disability. It is payable until the cessation of disability or until the start of regular retirement age, whichever comes first. At this time the disability pension will be replaced by a retirement pension according to art. 27, paragraph 5.

  Insurance of continued employment in case of partial disability
  If a partially disabled person continues to be employed by the company, the foundation will continue to insure the reduced salary.
  The partially disabled employee will be treated as two employees, one fully disabled and one fully employed.

12

Reduction of the disability pension
Disability pensioners are required to inform the foundation of any regular earned income. If, upon request, this information is not provided, the pension may be suspended.

Revision of disability
In case of change in the degree of disability, the disability pension may be re-determined or cancelled. The disability pensioner is required to inform the foundation immediately of any changes in the degree of his disability.

Article 29

Survivors benefits
  Principle
  In case of death of a member, of a beneficiary of a disability pension or a retirement pension, the following persons have a claim to a survivor's pension:
  a)  a wife sharing a common household with minor children,
  b)  a disabled wife,
  c)  a wife, even if a common household no longer exists due to health reasons or infirmity of age,
  d)  a wife sharing a common household with the member, if at the time of death the member and wife have been married for more than 5 years, the wife is 35 years or older, her income is smaller than that of the deceased member and her income from all sources is less than Pound Sterling 100'000.--,
  e)  If the surviving wife has permanently abandoned the common household, the board of the foundation may determine in its free judgement an amount of survivor's pension payable to the wife so that the pension amount corresponds to the amount necessary to the support of the wife from the member's earned income for the years preceding his death. In no case can this amount exceed the sum of a full survivor's pension.
  f)  In case of surviving partners and husbands, who were in a documented way significantly assisted by the deceased member, the board of the foundation can, after careful consideration of all personal circumstances and any written statement of the member, assist those persons on equal terms as the wife under paragraphs a) to e).

  Amount of survivor's pension
  In case of death of a member before the regular retirement age, or, in case of premature retirement, before beginning of pension payments, a survivor's benefit equal to seven times the determining salary becomes due. Of that sum, an amount equal to four times the determining salary will be paid as a lump sum.
  The remainder will be converted to a survivor's pension.
  In case of death after the beginning of pension payments, if the position has been paid for fewer than five years, the lump sum will be reduced according to the number of years for which benefits were payable. An additional survivor's pension of 50 % of the retirement pension paid to the member will be paid.

  Competing claimants
  The board of the foundation will decide between competing claimants pursuant to the principles of paragraphs a) to f) above.

13

## Re-joining and end of claim

The survivors pension starts on the month following the death of the member. The pension ceases upon the first of the following events:

a) remarriage
b) entering into a long-term life partnership
c) death of the claimant

## Vesting

### Principle

If the employment of a member ceases for reasons other than age, retirement, disability or death, vested benefits are due.

If the employment terminates prior to two full years of service, no claim to vested benefits exists other than for benefits acquired by pre-existing vested benefits brought in.

### Amount

The amount of vested benefits is determined according to:

a) the present value of the acquired benefits and
b) the actuarially calculated present value of the bought benefits by pre-existing vested benefits brought in.

Vested benefits are in all cases at least as high as the actuarially calculated present value of the pre-existing vested benefits brought in.

### Calculation formula for determining the acquired benefits

| acquired benefits at normal retirement date | × | attributable years of service / potential years of service until normal retirement age |
|---|---|---|

The present value of acquired benefits is determined by multiplying the amount of the acquired benefits with the appropriate present value factor of the following table:

| Male Age | Present value factor | Female Age | Present value factor |
|---|---|---|---|
| 20 | 2.273 | 20 | 2.397 |
| 21 | 2.180 | 21 | 2.507 |
| 22 | 2.489 | 22 | 2.619 |
| 23 | 2.605 | 23 | 2.739 |
| 24 | 2.725 | 24 | 2.863 |
| 25 | 2.849 | 25 | 2.994 |
| 26 | 2.979 | 26 | 3.130 |
| 27 | 3.116 | 27 | 3.271 |
| 28 | 3.260 | 28 | 3.419 |
| 29 | 3.409 | 29 | 3.575 |
| 30 | 3.565 | 30 | 3.738 |
| 31 | 3.729 | 31 | 3.908 |
| 32 | 3.900 | 32 | 4.086 |
| 33 | 4.079 | 33 | 4.271 |
| 34 | 4.266 | 34 | 4.465 |
| 35 | 4.462 | 35 | 4.670 |
| 36 | 4.668 | 36 | 4.882 |
| 37 | 4.883 | 37 | 5.105 |
| 38 | 5.108 | 38 | 5.339 |
| 39 | 5.344 | 39 | 5.583 |
| 40 | 5.591 | 40 | 5.840 |
| 41 | 5.850 | 41 | 6.110 |
| 42 | 6.123 | 42 | 6.392 |
| 43 | 6.408 | 43 | 6.688 |
| 44 | 6.708 | 44 | 6.997 |
| 45 | 7.024 | 45 | 7.322 |
| 46 | 7.355 | 46 | 7.663 |
| 47 | 7.705 | 47 | 8.019 |
| 48 | 8.073 | 48 | 8.394 |
| 49 | 8.461 | 49 | 8.787 |
| 50 | 8.871 | 50 | 9.200 |
| 51 | 9.305 | 51 | 9.635 |
| 52 | 9.764 | 52 | 10.092 |
| 53 | 10.249 | 53 | 10.573 |
| 54 | 10.763 | 54 | 11.081 |
| 55 | 11.311 | 55 | 11.615 |
| 56 | 11.893 | 56 | 12.180 |
| 57 | 12.512 | 57 | 12.777 |
| 58 | 13.174 | 58 | 13.410 |
| 59 | 13.879 | 59 | 14.079 |
| 60 | 14.634 | 60 | 14.772 |

### Method of payment

Vested benefits are transferred to the credit of the departing member with his new pension fund or, in case no such institution exists, are maintained by means of a vested policy or a vested account.

If the departing member demands another form of payment she/he must present a specific written request, together with proof that the legal requirements for such payment are met.

ORGANISATION AND ADMINISTRATION

Organs of the foundation
The organs of the foundation are the board of trustees of the foundation and the administration.

### Article 32

Board of the foundation
The board of the foundation is composed of three to five members which, with the reservation of Art. 89bis, paragraph 3, ZGB, are appointed by the founding company.

The president of the board of the foundation is designated by the board of directors of the founding company. The board of the foundation otherwise sets itself up and determines its own form. It designates the persons who represent the foundation and sign for it.

The period of office is two years. Re-election is admitted. Members automatically cease being on the board of the foundation as soon as their employment contract ends. The members replacing them are elected for the remaining period of office of their predecessors.

The board of the foundation is competent to act if a majority of its members are present. Decisions must be approved by a majority of these persons. In case of equality of votes, the president gives the casting vote.

Minutes will be kept of each meeting of the board of the foundation and must be signed by the president and by the secretary of the board of the foundation. Decisions may also be made in writing without a meeting of the board provided that no member of the board requests a meeting in person.

The members of the board of the foundation and their delegates are subject to a duty of strict confidence as to knowledge acquired regarding the personal circumstances of the insured members and the business affairs of the founding company and the affiliated employers.

### Article 33

Administration
The board of the foundation may, within its own responsibilities, delegate the administration of ongoing affairs, especially bookkeeping and customary business with members and beneficiaries, to a manager. The manager is responsible to the board of the foundation.

The manager takes care of:
- ongoing business affairs
- correspondence with members, beneficiaries of pensions and claimants
- the issuing of yearly balance statements and activity reports.
The manager is authorised to handle all cases according to the current regulations. He participates at the sessions of the board of the foundation in an advisory capacity and writes the minutes.

18

---

FINANCING

Employer's contribution
The employer contributes the amount needed to finance the necessary actuarial reserves and the cost of risk insurance.

### Article 35

Employee's contribution
Employees are exempt from contributions.

19

---

CONTROLLING

### Article 36

Auditors
The auditors are appointed by the board of the foundation. They examine yearly the correctness of the business management, accounts and investment of assets. The report of the auditors shall be reviewed and approved by the board of the foundation and presented to the supervisory authority. The period of office is one year. Re-election is allowed.

### Article 37

Actuarial audit
The board of the foundation will organise at least every two years an actuarial audit of the foundation by a recognised expert. The actuarial report is to be submitted to the supervisory authority.

If such an audit reveals a deficiency in one of the pension funds, the board of the foundation will decide upon appropriate measures to be taken, based upon the proposals of recognised experts for occupational benefits.

### Article 38

Extraordinary events
If the board of the foundation discovers that, because of extraordinary events such as war, epidemics, loss of foundation assets etc., a major change in the actuarial basis for the insurance has occurred or will occur, it is authorised, in agreement with the founding company, to reduce immediately future benefits as well as current pensions on a provisional basis.

The provisional benefits replace the regulatory benefits until the regulations have been revised on the basis of an actuarial audit undertaken within a reasonable time.

### Article 39

Supplemental decisions
The board of the foundation is authorised to make decisions concerning cases not specifically covered by the regulations in its free judgement within the context and purpose of the regulations.

### Article 40

Supervision
The foundation is under supervision as required by law.

20

---

FINAL AND TRANSITIONAL PROVISIONS

### Article 41

Definitive text
The German text of these rules is definitive.

### Article 42

Omissions in regulations
In cases where no applicable provision can be found in the regulations, the board of the foundation will make decisions based upon the purpose of the foundation.

### Article 43

Dissolution and liquidation
In case of merger of the founding company or its dissolution and passage to a legal successor the foundation follows the founding company.

In case of liquidation of the founding company, the foundation will continue to exist, without repartition decision of the board of the foundation, as long as any claimants are living.

In case of complete or partial liquidation of the foundation the assets of the foundation shall be used for the benefit of the claimants according to a plan authorised by the supervisory authority.

Restitution of foundation assets to the founding company or affiliated companies or their legal successors is not permitted.

### Article 44

Revision of rules and regulations
The board of the foundation can - in consent with the founding company and within the rules of the charter of the foundation - amend the rules and regulations within the legal framework. The up to the date of the amendment of the rules and regulations accumulated capital must be preserved for occupational welfare benefits of the members.

### Article 45

Enactment
The regulations dated December 31, 1993 are accepted by the board of the foundation and are enacted the first of January, 1994.

Two copies of rules and regulations are to be submitted to the supervisory authority.

Zug, December 31, 1993

21

# EXHIBIT "C"

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RAJIV GARG,

                              Plaintiff,

                      -against-

WINTERTHUR,

                             Defendant.

-------------------------------------------------------------X

**AFFIDAVIT**

Civil Action No:
07 Civ. 0510 (ADS)(AKT)

STATE OF NEW YORK    )
                                )SS.:
COUNTY OF NEW YORK  )

      RAJIV GARG, being duly sworn deposes and says:

      1.    I am over the age of eighteen (18) and I am the plaintiff in this action. As such, I have first-hand, personal knowledge of the facts and circumstances herein.

      2.    From 1994 through 1999 I was the Head of Global Market Risk Management for Credit Suisse First Boston. In this capacity my staff and I were responsible for monitoring and analyzing financial markets to assess the risks applicable to Credit Suisse's financial products. I worked out of the Credit Suisse office located in New York, New York, as well as from my home in Nassau County, New York.

      3.    That while an employee at Credit Suisse, I enrolled in the Winterthur Columna Benefit Plan, including the Long Term Disability Pension plan, offered to me and other Credit Suisse employees, on behalf of Pension Fund International of Credit Suisse Group.

4. That during the course of my enrollment in the Winterthur plan, I resided at 3 Farmwoods Lane, Upper Brookville, NY, County of Nassau, then at 14 Woodhill Lane, Upper Brookville, NY, County of Nassau, State of New York.

5. That my disability pension credits were earned from Winterthur while I resided at the above stated addresses in the County of Nassau, State of New York.

6. That correspondence from Winterthur was sent to me at my Nassau County addresses. I sent all correspondence to Winterthur from my Nassau County addresses.

7. That the terms of the Winterthur contract for benefits provided that in the event I became disabled from my employment I would receive approximately $112,500.00 per annum.

8. That my position at Credit Suisse required me to work approximately 75 hours per week and travel several days per month. In 1999 my diabetes progressed and I discovered that I had diabetic retinopathy and related medical problems, rendering me medically unable to perform the essential functions of my job.

9. That in approximately October 2000, I filed for my Long Term Disability pension benefits with Winterthur. Winterthur wrongfully denied me these benefits. Had these benefits been provided to me, I would have received them at 14 Woodhill Lane, Upper Brookville, NY, County of Nassau.

10. That the denial of these benefits by Winterthur has caused me to suffer severe and grievous financial damages. That I was forced to file for Social Security Disability benefits in Nassau County, New York.

11. That it is my understanding that this Winterthur plan was administered by my employer, Credit Suisse First Boston, New York, New York.

RAJIV GARG

Sworn to before me this

day of April, 2007

NOTARY PUBLIC

LUZ STELLA HURTADO
Notary Public, State of New York
No. 01HU6146965
Qualified in Queens County
Commission Expires 05/30/2010

EXHIBIT "D"

Home  Sitemap  Deutsch          Credit Suisse Group Sites  About Credit Suisse  W

## Winterthur Group

▼ About Winterthur    ► Products & Solutions    ► Countries    ► News & Media    ► Jobs & Career

Winterthur in brief
Governance
Organization
  Credit Suisse Group
  Winterthur Group
Management
Financial Information
History
About this website

**More information:**
► **Credit Suisse Group**

### Structure of Credit Suisse Group's operations

Credit Suisse Group

| Credit Suisse | Credit Suisse First Boston | Winterthur |
|---|---|---|
| - Private Banking | - Institutional Securities | - Life & Pensions |
| - Corporate & Retail Banking | - Wealth & Asset Management | - Non Life |

| Legal entity | | Legal entity |
| Credit Suisse | | Winterthur |

Organizational structure after legal entity merger as of May 13, 2005.

© 2003-2004 Winterthur          [Legal Notice] [Security] [Technical Requirements]
Updated on 20.06.2005

# EXHIBIT "E"

**Federal Office of Justice**
*Federal Department of Justice and Police*

# INTERNATIONAL
# JUDICIAL ASSISTANCE
# IN CIVIL MATTERS

## Guidelines

(New fully revised edition)

**Bern 2003**

Updated in July 2005

©2003 by the Section of Private International Law of the Federal Office of Justice, together with the Division of Judicial Assistance (FOJ), the Directorate of International Law (DFA) and the Office of the Attorney General of Switzerland
Internet:http://www.ofj.admin.ch/themen/rechtshilfe/wegl-ziv-e.pdf

FOREWORD - DISCLAIMER ................................................................................................................. 1

I.    GENERAL REMARKS ............................................................................................................... 1
      A.    THE CONCEPT OF INTERNATIONAL JUDICIAL ASSISTANCE IN CIVIL MATTERS .................................... 1
      B.    ASSISTANCE AND SOVEREIGNTY ................................................................................................... 1
      C.    LEGAL BASIS AND APPLICABLE LAW ............................................................................................ 2
            1.    Hague Conventions ........................................................................................................... 2
            2.    Bilateral Agreements ......................................................................................................... 3
            3.    Absence of a Treaty .......................................................................................................... 3
            4.    Applicable Law ................................................................................................................. 3
            5.    Principle of Reciprocity ..................................................................................................... 3
      D.    CIVIL OR COMMERCIAL MATTER ................................................................................................. 4

II.   SERVICE OF DOCUMENTS ...................................................................................................... 5
      A.    THE CONCEPT OF SERVICE .......................................................................................................... 5
      B.    DOCUMENTS THAT MUST BE SERVED BY MEANS OF JUDICIAL ASSISTANCE ....................................... 5
      C.    COMPETENT AUTHORITIES .......................................................................................................... 6
            1.    Hague Service Convention ................................................................................................. 6
                  1.1   Forwarding authority ............................................................................................... 6
                  1.2   Receiving Authority ................................................................................................. 6
            2.    1954 Hague Convention ..................................................................................................... 7
            3.    Absence of a Treaty .......................................................................................................... 7
      D.    CHANNELS OF TRANSMISSION ..................................................................................................... 8
            1.    Hague Service Convention ................................................................................................. 8
                  1.1   Ordinary Channel (Art. 2 to 7 Hague Service Convention) ........................................... 8
                  1.2   Alternative Channels (arts. 8 Hague Service Convention) ............................................ 8
                        1.2.1    Reservations and declarations made by Switzerland ........................................ 8
                        1.2.2    Consequences of the Principle of Reciprocity ................................................. 9
            2.    1954 Hague Convention ..................................................................................................... 9
                  2.1   Ordinary Channel (articles 1 through 4) ..................................................................... 9
                  2.2   Alternative Channels (art. 1 paras. 3 and 6 1954 Hague Convention) ............................ 10
            3.    Absence of a Treaty .......................................................................................................... 10
            4.    Other Transmission Channels ............................................................................................ 10
      E.    REQUIREMENTS FOR THE REQUEST .............................................................................................. 11
            1.    Hague Service Convention ................................................................................................. 11
                  1.1   Form ..................................................................................................................... 11
                  1.2   Execution and Languages ......................................................................................... 11
                  1.3   Protection given to addressees, sanctions .................................................................. 12
                  1.4   Grounds for refusing service ..................................................................................... 13
                  1.5   Costs ..................................................................................................................... 13
            2.    1954 Hague Convention ..................................................................................................... 14
                  2.1   Form ..................................................................................................................... 14
                  2.2   Execution and language ........................................................................................... 14
                  2.3   Protection for the addressee ...................................................................................... 14
                  2.4   Costs ..................................................................................................................... 15
            3.    Absence of a Treaty .......................................................................................................... 15
      F.    SPECIAL QUESTIONS .................................................................................................................. 15
            1.    Service addressed to foreign states or state entities ............................................................. 15
            2.    Service of Process and Recognition of Judgments ................................................................ 15
            3.    Address of Recipient unknown – Service by Public Notice ..................................................... 16
            4.    Agreement between the European Community and Switzerland relating to the Free Movement of Persons,
                  Federal Act on the Free Movement of Lawyers and Assistance ............................................... 16

III.  OBTAINING EVIDENCE ............................................................................................................ 17
      A.    FOREWORD ............................................................................................................................... 17
            1.    Overview ......................................................................................................................... 17
            2.    Cases in which the procedures for assistance need not be followed ........................................ 17
      B.    THE COMPETENT AUTHORITIES AND TRANSMISSION PROCEDURES .................................................. 18
            1.    Hague Evidence Convention ............................................................................................... 18
                  1.1   Under Chapter I of the Hague Evidence Convention .................................................... 18
                  1.2   Under Chapter II Hague Evidence Convention ............................................................ 19

            2.    1954 Hague Convention ..................................................................................................... 19
            3.    Absence of a Treaty .......................................................................................................... 19
            4.    Other channels of transmission ......................................................................................... 20
      C.    REQUIREMENTS FOR THE APPLICATION ........................................................................................ 20
            1.    Hague Evidence Convention ............................................................................................... 20
                  1.1   Application under Chapter I ...................................................................................... 20
                        1.1.1    Form .......................................................................................................... 20
                        1.1.2    Content (art. 3 Hague Evidence Convention) .................................................. 20
                        1.1.3    Language and translations (art. 4 Hague Evidence Convention) ........................ 21
                        1.1.4    Execution ................................................................................................... 21
                              a.    Applicable Law (art. 9 Hague Evidence Convention) .............................. 21
                              b.    Obtaining evidence via a person appointed by the authorities addressed (art. 14 al. 3 Hague Evidence Convention) ........................................................................................... 22
                              c.    The right to refuse to testify / Banking secrecy .................................... 22
                              d.    Participation of the members of the court of the requesting authority (art. 8 Hague Evidence Convention) and/or of the parties or of their representatives (art. 7 Hague Evidence Convention) ........................ 22
                              e.    Grounds for refusal ......................................................................... 22
                              f.    Costs ............................................................................................. 23
                        1.1.5    Letter of request relating to "pre-trial discovery" proceedings ......................... 23
                  1.2   Request under Chapter II of the Hague Evidence Convention (art. 17 to 22 Hague Convention 70) ......... 25
                        1.2.1    General ....................................................................................................... 25
                        1.2.2    Conditions laid down in article 21 Hague Evidence Convention - Procedural safeguards ......... 25
                        1.2.3    Authorisation procedure before the Swiss authorities, and content of the application ............. 26
                        1.2.4    Swiss applications to a foreign country ........................................................... 27
            2.    1954 Hague Convention ..................................................................................................... 28
                  2.1   Basis ..................................................................................................................... 28
                  2.2   Form and content .................................................................................................... 28
                  2.3   Language and translation ......................................................................................... 28
                  2.4   Applicable law ....................................................................................................... 28
                  2.5   Grounds for refusal ................................................................................................. 29
                  2.6   Costs ..................................................................................................................... 29
      D.    OBTAINING EVIDENCE DIRECTLY BY THE PARTIES OR THE DIPLOMATIC OFFICERS OR CONSULAR AGENTS IN
            SWITZERLAND UNDER THE 1954 HAGUE CONVENTION ................................................................... 29
            1.    Acts carried out by the parties and article 271 PC .............................................................. 29
            2.    Acts carried out by diplomatic officers or consular agents ..................................................... 29
      E.    OBTAINING EVIDENCE IN THE ABSENCE OF A TREATY ................................................................... 30
      F.    SPECIAL ISSUES ........................................................................................................................ 30
            1.    Hearing by Videoconference .............................................................................................. 30
            2.    Hearing by Telephone ....................................................................................................... 31

CONTACTS ....................................................................................................................................... 31

Updated July 2005

## ABREVIATIONS

| AI | Canton of Appenzell Innerhoden |
|---|---|
| Art. | article(s) |
| FOJ | Federal Office of Justice |
| BE | Canton of Bern |
| ATF | Recueil officiel des arrêts du Tribunal fédéral (Swiss Federal Supreme Court's decisions Reporter) |
| ATFA | Recueil officiel des arrêts du Tribunal fédéral des assurances (Swiss Federal Insurance Court's decisions Reporter) |
| RS | Recueil Systématique du droit fédéral (Systematical Record of Swiss Legislation) |
| FDJP | Federal Department of Justice and Police |
| DFA | Federal Department of Foreign Affairs |
| PC | Swiss Penal Code of 21 December 1937 (RS 311.0) |
| BL | Canton of Basel-Landschaft |
| BS | Canton of Basel-Stadt |
| FR | Canton of Fribourg |
| GE | Canton of Geneva |
| GR | Canton of Graubünden |
| JU | Canton of Jura |
| NE | Canton of Neuchâtel |
| SZ | Canton of Schwyz |
| TI | Canton of Vaud |
| ZG | Canton of Zug |
| ZH | Canton of Zurich |

III

## FOREWORD - DISCLAIMER

These Guidelines are intended for practitioners (central authorities, judges, lawyers, diplomatic and consular agents) confronted with questions on international judicial assistance in civil matters. Above all, they provide practical advice and information. However, in addition to this advice, the Section of Private International Law of the Federal Office of Justice (FOJ) considered it to be useful to give its opinion on certain frequently asked questions which are controversial and which have not yet been ruled on by a court. In such cases, the FOJ is unable to provide any guarantee in respect of its solution to these questions within the scope of any proceedings before a court.

In addition to these Guidelines, we would also recommend you consult the "Guide de l'entraide judiciaire internationale en matière civile et pénale" (Guide on Judicial Assistance, http://www.rhf.admin.ch/). This guide is updated on a regular basis. It gives practical recommendations with regard to the procedures to follow for Swiss requests abroad on a country-by-country basis (To which authority should the request be addressed? How many copies? In which languages? How long does it take for the request to be executed? etc.).

Finally, the FOJ has put together information downloadable over the Internet for those wanting to determine the locally competent Swiss authority in a given case (http://www.elorge.admin.ch/).

## I.   GENERAL REMARKS

### A.   The Concept of International Judicial Assistance in Civil Matters

International judicial assistance in civil matters forms part of the law on international civil procedure, which, in terms of assistance, deals with questions relating to the international competence of the courts as well as those relating to the recognition and execution of judgements.

The object of international judicial assistance is the provision of support to the legal system of the state making the request by the authorities and courts of the state to which the request is made, by carrying out procedural acts or other official acts and communicate the results to the authorities or courts of the requesting state, with a view to their being used in specific proceedings (JAAC 1985 [49/I], p. 93).

Assistance measures in the normal sense make the service of judicial and extra-judicial documents as well as the obtaining of evidence[1]. These Guidelines are devoted to this category of assistance measures. Assistance measures in the broader sense include other official measures in relation to foreign proceedings, such as international judicial assistance (see e.g. Convention of 25.10.1980 on International Access to Justice [RS 0.274.133] and European Agreement of 27.1.1977 on the Transmission of Applications for Legal Aid [RS 0.274.137]), the enforcement of decisions (see e.g. the Convention on the Recognition

[1] Such as local inspections, taking statements from witnesses and parties, production of documents, providing expert opinions, etc.

1

---

Updated July 1973

and Enforcement of Decisions relating to Maintenance Obligations of 2.10.1973 [RS 0.211.213.02 ], the Convention on the Recovery Abroad of Maintenance of 20.06.1956 [RS 0.274.15]), assistance in connection with the abduction of children (c.f. Convention on the Civil Aspects of International Child Abduction of 25.10.1980 [RS 0.211.230.02] ; European Convention on Recognition and Enforcement of Decisions concerning Custody of Children and on Restoration of Custody of Children of 20.05.1980 [RS 0.211.230.01]) and in connection with the application of the law (c.f. European Convention on Information on Foreign Law of 7.06.1968 [RS 0.274.161]).

### B.   Assistance and Sovereignty

In terms of article 271 para. 1 of the Swiss Penal Code (PC; RS 311.0), it is an offence for anyone "to carry out on Swiss territory without lawful authority activities on behalf of a foreign state that are the responsibility of a public authority" as well as for anyone "to carry out such acts on behalf of a foreign party or organisation" or for anyone to "encourage such acts". This provision strikes against acts that violate Swiss territorial sovereignty and which as a consequence cannot be carried out without the permission of the Swiss authorities. According to article 299 para. 1 PC it is an offence for anyone "to violate the sovereignty of a foreign country, notably by committing official acts on the territory of that country without permission." These provisions express the general principle of international law according to which the sovereignty of any state extends only to its national frontiers; accordingly, the authorities of a state cannot, in principle, exercise their public powers outside their territory.

According to the Swiss view – as well as that of numerous other states – the service of judicial or extra-judicial documents as well as the obtaining of evidence for court proceedings constitute the exercise of public powers (on the subject of service see BGE 124 V 47 [50]). Accordingly, these procedures cannot simply be undertaken from beyond the frontiers of the state concerned without authorisation. The authority in question must therefore resort to the mechanisms of assistance, otherwise it will violate the sovereignty of the state in which it is carrying out these acts. The concept of sovereignty under public international law, however, may come into conflict with the power of the judge in question, who has jurisdiction to rule on a case. We will examine in greater detail the interaction between sovereignty under public international law and the prerogatives of the judge who has local jurisdiction to rule on the case (see III.A.2, p. 17). After all, the service of certain documents without resorting to judicial assistance is tolerated in certain circumstances (see II.B, p. 5).

### C.   Legal Basis and Applicable Law

#### 1.   Hague Conventions

The multilateral conventions in the field of international judicial assistance in civil cases are as follows:

- The Hague Convention relating to civil procedure of 1 March 1954 (1954 Hague Convention; RS 0.274.12) ;

- The Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Hague Service Convention ; RS 0.274.131) ; and

2

---

Updated July 2005

- The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (Hague Evidence Convention; RS 0.274.132)[2].

It should be pointed out that the Hague Convention of 17 July 1905 relating to civil procedure (RS 0.274.11) only applies to relations between Switzerland and Iceland.

#### 2.   Bilateral Agreements

There are also a number of bilateral agreements between Switzerland and certain states that authorise direct contact between judicial authorities or which serve to complement the aforementioned Hague Conventions. Switzerland has entered into such agreements with Germany (RS 0.274.191.361), Austria (RS 0.274.191.631 ; with Austria, not only is direct contact between authorities permitted, but also contact between the authority and the addressee of the proceedings), Belgium (RS 0.274.181.721), France (RS 0.274.183.491), Italy (0.274.184.542), Luxembourg (RS 0.274.185.181), Greece (RS 0.274.183.721), Monaco (0.274.185.671), Pakistan (RS 0.274.186.231), Poland (RS 0.274.166.491), Turkey (0.274.187.631), Hungary (RS 0.274.184.181), the Czech Republic (RS 0.274.187.411), Slovakia (RS 0.274.187.411), and Estonia (RS 0.274.721). Although there is no such agreement with Liechtenstein, direct contact between authorities has become customary.

#### 3.   Absence of a Treaty

In the absence of any international convention, Switzerland applies by analogy the 1954 Hague Convention to the foreign requests that it receives.

Where there is no agreement and unless there is an established practice to the contrary, Swiss requests must follow diplomatic channels (see II.D.2.2, p. 10).

#### 4.   Applicable Law

Judicial assistance in civil matters, which is an area of public international law, falls under federal jurisdiction (art. 54, 56, 172 and 184 of the Swiss Constitution of 18 April 1999 [SR 101]. There is however only one brief provision at a federal level in articles 11 and 12 of the Swiss International Private Act of 18 December 1987 (RS 291). As a result, the details relating to notification and obtaining evidence are primarily regulated by the law of the canton in which the proceedings are conducted (laws on the constitution of courts, civil procedure codes).

#### 5.   Principle of Reciprocity

Under article 21 para.1 of the Vienna Convention on the Law of Treaties of 23 May 1969 (RS 0.111), a state that has not established a reservation in respect of a Convention may take advantage of a reservation established by another state in its relations with that state. Article 21 of the Vienna Convention reflects the principle of reciprocity in public international

[2] The application of Hague Service and Evidence Conventions in the various countries is explained in the "Practical Handbook on the operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters" and the "Practical Handbook on the operation of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters", which can be ordered from Permanent Bureau, Hague Conference on Private International Law, 6, Scheveningseweg, 2517 KT The Hague, the Netherlands, secretariat@hcch.net.

3

sibility of direct service by mail in Switzerland does not automatically invalidate the service of the documents as out of the Swiss proceedings in say; however, has consequences with regard to whether the judgment will be recognised. At any rate, the DFA regularly gives notice that errors in the service of documents can under Swiss law result in the non-execution of foreign civil judgments (see II.F.2, p. 15). Occasionally, service is effected again by means of judicial assistance.

The deliberate service of documents by mail can be reported to the Office of the Attorney General of Switzerland (violation of article 271 of the Swiss Penal Code).

Finally, article 9 of the Hague Service Convention provides for the use of consular channels, that is, the ordinary channel stipulated in article 1 of the 1954 Hague Convention (see II.D.2.1, p. 9). With regard to this, Switzerland has also designated the cantonal central authorities as recipient authorities for requests from abroad.

### 1.2.2 Consequences of the Principle of Reciprocity

In application of the *principle of reciprocity*, the Swiss reservations may be invoked by the recipient state in relation to requests for service coming from Switzerland, even if the recipient state has not made the same reservations (see I.C.5, p. 3). Thus, the Swiss authorities may not use the transmission channels in respect of which Switzerland has stipulated reservations. Recipient states may, however, waive their right to invoke the principle of reciprocity. The Guide on Judicial Assistance, http://www.rhf.admin.ch/, mentions possibilities for Swiss authorities to use channels of transmission alternative to those that Switzerland has objected to. For example, in relations between Switzerland and *Ireland* as well as between Switzerland and *Canada*, it is accepted that requests for service coming from Swiss authorities may be sent via the FOJ to the competent Swiss representation in Ireland or Canada. The Swiss representation serves the documents on the addressees by registered mail with acknowledgement of receipt. In matters between Switzerland and the *United States of America*, the cantonal central authorities can address their request to the competent Swiss representation, which in turn serves the documents directly on the addressee (see ATF 109 III 100; for the requirements in relation to form, see II.E.1.1, p. 11).

## 2. 1954 Hague Convention

### 2.1 Ordinary Channel (arts. 1 to 4)

The 1954 Hague Convention provides for the service of documents via the consular channel (art. 1).

This means that the competent foreign authorities address their requests to the consulate, embassy or any other representation of their country in Switzerland. This representation forwards the request to the Federal Office of Justice, which, in turn, forwards it to the relevant cantonal authority.

Requests from a Swiss authority are addressed to the FOJ, which forwards them to the competent Swiss representation in the receiving state, which, in turn, sends them on to the authority designated by the recipient state (art. 1 para. 1 1954 Hague Convention).

9

First of all, the states that are parties to the 1954 Hague Convention may declare that they wish to use the diplomatic channel instead of the consular channel (art. 1 para. 3). In such a case, requests from Switzerland must be addressed to the FOJ, which forwards them to the Swiss representation in the receiving state, which, in turn, forwards the request to the foreign affairs department of the receiving state. The latter sends the request on to the competent local authority.

Moreover, article 6 of the 1954 Hague Convention permits direct service by mail in respect of an addressee resident abroad, or via the competent judicial or public officials of the recipient country, or, alternatively, through diplomatic or consular agents. *Although Switzerland has not made any reservation in relation to this, it does not permit service by mail on its own territory.* However, Switzerland permits service by diplomatic or consular agents as provided for in the Hague Service Convention, provided the addressee is a national of the state of origin of the documents (see JAAC 1968-1969 [34/15], p. 34 and footnote n° 8 above). The consular or diplomatic agents are not permitted to make any use of coercive measures.

Just as is the case under the Hague Service Convention, the *principle of reciprocity* is applicable to the 1954 Hague Convention. Thus the Swiss authorities may not use channels for service abroad that are not permitted in Switzerland (see I.C.5, p. 3).

## 3. Absence of a Treaty

In the absence of any treaty, Switzerland applies the provisions of the 1954 Hague Conventions by analogy to requests received from abroad (see I.C.3, p. 3). Switzerland also accepts the service of documents by consular or diplomatic agents on the requesting country's own nationals. Finally, Switzerland does not accept direct service from abroad by mail.

Swiss requests to other countries must, unless there is a contrary custom, for example in favor of consular channels, follow diplomatic channels (see II.D.2.2, p. 10). Direct service by mail is permitted only if the recipient state accepts this form of service. For a description of the procedure applicable to each country, please see the Guide on Judicial Assistance, http://www.rhf.admin.ch/).

## 4. Other Transmission Channels

All Hague Conventions authorise states to enter into bilateral agreements that provide more favourable conditions. As a result, direct correspondence between requesting and recipient authorities or courts in certain countries remains possible (see I.C.2, p. 3).

Diplomatic channels can always be used (see II.D.2.2, p. 10), even where a convention provides for a quicker means of service. Where the Hague Service Convention applies, its article 9 para. 2 provides for a special rule in this regard.

10

## E. Requirements for the Request

## 1. Hague Service Convention

### 1.1 Form

In its article 3, the Hague Service Convention provides for the use by contracting states of a model form for requesting the service of judicial or extra-judicial documents. The text printed on the form must include a version in either English or French [10]. It consists of three parts, the request for service, a certificate containing the details of execution, and a page containing a summary of the document being served (art. 7 para. 1 Hague Service Convention; http://www.ofj.admin.ch/rhf/d/service/recht/must06.htm). The responses to the printed requests for information are written either in the language of the state receiving the request, or in English or French (art. 7, para. 2 Hague Service Convention). Some states require, in our opinion incorrectly, that the printed responses be written in their language (Guide on Judicial Assistance, http://www.rhf.admin.ch/).

The model form and the documents to be served are to be sent in duplicate (art. 3 para. 2 Hague Service Convention). The authentication of the documents or any similar formality is not required (art. 3 para. 1 Hague Service Convention). Regarding the necessity to join the translation of the exhibits, see II.E.1.2, p. 11.

When the alternative channels of service are used (see II.D.1.2, p. 8), the model forms do not need to be used, and no translation is required. It should, however, be noted that if the addressee is unable to understand the nature and significance of the documents served, this can pose problems when it comes to the recognition of the judgment (violation of the right to be heard) and this may remain a problem even where the receiving state permits the use of the alternative channels for service. Accordingly, it is recommended that the forms in the Hague Service Convention are used for the alternative channels as well in order to ensure that the addressee is informed of the nature of the documents served. The Hague Conference has adopted a recommendation to this effect (see http://www.hcch.net/f/conventions/recommandation.html; see also http://www.ofj.admin.ch/rhf/d/service/recht/form65.pdf). The OFJ recommends that the form be filed in the language of the executing state.

### 1.2 Execution and Languages

The Swiss authorities effect the service of documents requested by a foreign state, on the first occasion and in the absence of any special requests by the requesting state, by "simple delivery" to the addressee. Simple delivery is covered by article 5 para. 2 of the Hague Service Convention. The translation of the documents to be served is not necessary for this mode of service; service is effected, as a general rule, by registered mail or by judicial act [11]. This form of service is, however, permitted only if the addressee accepts service (art. 5 para. 2 Hague Service Convention). If the addressee refuses to accept simple delivery, the Central Authority or the competent cantonal court will make a note of this on the certificate and will notify the requesting state that formal service has to be effected. For

---

[10] Under article 7 the Hague Service Convention, the additional printing of the text in one or more official languages of the requesting state (state of origin) is permitted.

[11] Delivery of a "judicial document" is regulated in the general terms and conditions of the Swiss Post Office and its information brochure.

11

formal service, however, the Swiss authorities require the translation of the documents into German, French, or Italian, depending on the region in question before attempting to service the document again (see the Swiss reservation to art. 5 para. 3 of the Hague Service Convention). In order to guarantee the right of the addressee in article 5 para 2 of the Hague Service Convention to refuse service by simple delivery and to require a translation, it is advisable to inform the addressee in an appropriate manner. The FOJ has thus recommended that cantonal authorities to inform the addressee at the moment of service of his rights and to fix, where appropriate, a short period within which to exercise such rights. For example, if service is effected by mail, an accompanying letter or a notice on the envelope could inform the addressee of his rights and the way in which he should exercise them. Simple service by the procedure used for court documents is not sufficient to allow the addressee to exercise his rights.

With regard to Swiss requests to other countries, it is recommended to consult the Guide on Judicial Assistance (http://www.rhf.admin.ch/) to find the requirements specified by the recipient country. Certain countries require the immediate translation of the documents to be served and will therefore not proceed in the first instance with service by simple delivery.

The requesting authority can demand that service be made formally from the beginning either according to one of the forms prescribed by the law of the receiving state (art. 5 para. 1 lit. a Hague Service Convention), or according to a special form prescribed by the law of the requesting state (art. 5 para. 1 lit. b Hague Service Convention). In the latter case, the demand will only be met if the required form is compatible with the law of the receiving state. If a request is made for formal service or if this form of service proves to be necessary due to the refusal of the addressee to accept service, the requesting state may have to pay the resultant costs (art. 12 para. 2 Hague Convention 14 ; see II.E.1.5, p. 14).

It is important to note that the effects of the impossibility or refusal of service are not governed by the Hague Service Convention. The question of the law under which the validity of service needs to be decided is not easy to answer. The Swiss Federal Court has taken a stab at the question (5J.2000, p. 89 et seq.). In the view of the FOJ it is generally the law of the requested state that is relevant, unless the law of the requesting state imposes particular requirements to be met. In the latter case, in the view of the FOJ, it will be up to the requesting authority to request a special form (Art. 5(1)(b) of the Hague Service Convention).

With regard to a foreign request for service in Switzerland, the authority effecting service must complete the relevant certificate in every case, even if it is not attached to the request.

### 1.3 Protection given to addressees, sanctions

Articles 15 and 16 of the Hague Service Convention provide for a mechanism intended to protect the defendant who has not been served with a document. The aim of article 15 is therefore to ensure rights of defence (Report of TABORDA FERRERA, Acts and Documents of the 10th session (1964), Tenth. Service of Process, p. 93 ; http://www.hcch.net/f/conventions/expl14f.html).

Article 15 of the Hague Service Convention deals with the service of a summons or equivalent document in accordance with the provisions of the Convention when the defendant fails to appear in court.

Article 15 therefore provides in its first paragraph that when a summons or equivalent document has to be transmitted abroad for the purpose of service, under the provisions of the Hague Service Convention and the defendant fails to appear, the court is required to

12

defer judgment until it is established that the document was either served in accordance with the *rules prescribed by the applicable state laws for service* (art. 15 para. 1 lit. a Hague Service Convention), *or the document was actually delivered to the defendant or to his residence by another method provided for by the Hague Service Convention* (art. 15 para. 1 lit. b). The first possibility envisages cases where service has been effected in accordance with article 5 para. 1 lit. a of the Hague Service Convention. The second possibility is aimed at cases of transmission in accordance with article 5 para. 1 lit. b of the Hague Service Convention as well as cases where alternative channels of transmission (see II.D.1.2, p. 8) are used. In this second case, it is not sufficient that the alternative channels of transmission or a method of transmission peculiar to the requesting state (art. 5 para. 1 lit. b Hague Service Convention) was used, it is also necessary that *service has been effected on the defendant in person or at least at his residence* (Report of TABORDA FERREIRA, op. cit., p. 95). With regard to alternative channels of transmission, the reservations made by contracting states in relation to certain methods of transmission should be taken into account. In addition, the court may defer judgement, whatever the situation, if service has been effected in sufficient time for the defendant to be able to defend himself.

Article 15 para. 2 of the Hague Service Convention qualifies the protection given by the first paragraph to the extent that it allows contracting states to declare that their courts may give judgment irrespective of paragraph 1, subject to the conditions, however, that *i)* the document has been transmitted by one of the methods provided for by Hague Service Convention *ii)* that a period of not less than six months has elapsed and *iii)* that no certificate has been obtained despite every reasonable effect being made by the competent authorities. Switzerland has not made any declaration in terms of article 15 para. 2 of the Hague Service Convention. This option is, however, open to any Swiss court through the application of the principle of reciprocity (see I.C.5, p. 3) when, firstly, service should have taken place in a state which has made such a declaration, and secondly, cantonal procedural law permits the court to act accordingly.

If, however, a judgment has been given against a defendant who has not been able to appear, the defendant may, under article 16 of the Hague Service Convention request the court to relieve him of the effects of failing to appeal against the judgment within the given time. Article 16 does not, however, apply to judgments relating to the status or capacity of persons.

*1.4   Grounds for refusing service*

If the Central Authority concludes that the provisions of the Hague Service Convention have not been complied with, article 4 of the Convention mandates that the Central Authority promptly inform the applicant.

Furthermore, service may be refused if the document does not relate to a civil or commercial matter (art. 1 para. 1 Hague Service Convention; see I.D, p. 4), if a particular form is required that is contrary to the law of the state addressed (art. 5 para. 1. lit. b), or if the execution of service is such that it would infringe upon the sovereignty or security of the state addressed (art. 13 para. 1). The term "sovereignty" must be interpreted restrictively. It cannot be understood as being equivalent to public policy. In this sense, article 13 paragraph 2 of the Hague Service Convention indicates that the execution of a request may not be refused solely on the ground that the law of the state addressed claims exclusive jurisdiction over the subject matter of the action or does not permit the action upon which the application is based. In other words, these grounds are not considered relevant to the sovereignty of the state addressed.

13

In principle, no charges may be made for services relating to service of documents provided under the Convention (art. 12 para. 1 Hague Service Convention). There is, however, an exception for cases requiring the involvement of a judicial officer or the use of a particular method of service (art. 12 para. 2 lit. a and b Hague Service Convention). Moreover, bilateral agreements may provide different rules (see I.C.2, p. 3).

**2.   1954 Hague Convention**

This convention served as the basis for the Hague Service Convention. The requirements and conditions applicable to the service of documents under the Hague Service Convention have been largely restated and differ from those contained in the 1954 Hague Convention only in a few points. Only these differences are considered below.

*2.1   Form*

Requests for service based on the 1954 Hague Convention need not be transmitted in a standardized form.

Under article 1 paragraph 1, the request must indicate the authority issuing the document transmitted, the name and designation of the parties, and the address of the person to be served. It should state the subject matter of the action and describe in detail the documents to be served (e.g.: legal claim, response to the claim, judgment on the evidence; art. 1 para. 1 Hague Convention 1954). A receipt should always be attached to the request. If service must be effected in a special form (e.g. according to the law of the requesting state), it is advisable to request this expressly and to justify the request (art. 3 1954 Hague Convention).

*2.2   Execution and language*

Here too, service can be effected either by simple delivery (art. 3 1954 Hague Convention together with art. 2 1954 Hague Convention; without translation; see II.E.1.2, p. 11), subject to refusal by the addressee, or by formal service (with translation; in Switzerland either in German, French or Italian, depending on the place of execution of the request, see ATF 103 III 69). With regard to simple delivery, it should be recalled that the FOJ is of the opinion that it is advisable to inform the addressee of his right to refuse service if the documents have not been translated (see II.E.1.2, p. 11). The court is not obligated to complete the certificate; it is sufficient if the addressee signs the receipt.

*2.3   Protection for the addressee*

In contrast to the Hague Service Convention, the 1954 Hague Convention does not provide any mechanism for the protection of the rights of the defendant.

14

EXHIBIT "F"

Ref.Nr. Obergericht Rechtshilfe
(Bitte immer angeben)

# Weiser & Associates, L.L.P.

ATTORNEYS AT LAW

215 LEXINGTON AVENUE, NEW YORK, N.Y. 10016

TEL: (212) 213-3111

FAX: (212) 213-5939

E-MAIL:
INFORMATION@WEISERLAW.COM

INTERNET·
WWW.WEISERLAW.COM

WKi: 0310

MARTIN J. WEISER
NICOLE S. WEISER

BERNARD A. ANDERSON··
JAIMEE L. NARDIELLO·

ROY C. GORDON
JAMES J. CURRY, JR.·
OF COUNSEL

·MEMBER OF N.Y. & N.J. BAR
··MEMBER OF N.Y. & P.A. BAR

20 February 2007

Winterthur Group
General Guissan Strasse, 40
8401 Winterthur, Switzerland

Zusammenfassung von "Summons und Complaint"
(Dieses ist ein Computer übersetzer Text)

Innerhalb Zwanzig (20) Tage nach Ihnen empfangen Sie dieses "Summons und Complaint" Sie

müssen Ihre Antwort zum Rechtsanwaltsbüro von liefern:

Weiser & Associates
215 Lexington Ave., 18th Floor
New York, New York 10016
United States

Vereinigte Staaten, die die Rechtsanwälte für den Zivilkläger sind. Sie müssen diese Antwort

zur Sekretärin von "United States District Court for the Southern District of New York" auch liefern.

Die Ablehnung zum Liefern einer Antwort ergibt automatisches Urteil. Der Zweck dieser Beanstandung

ist einen Prozeß im Namen RAJIV GARG anzufangen, gegen WINTERTHUR, mit dem Ziel das

Zurückgewinnen der falsch abgelehnten Erwerbsunfähigkeitsrenten.

EXHIBIT "G"

# V.    Financing of the Plan

### Art. 33   Contributions

1.   The Plan is financed by regular contributions payable by the Sponsoring Employer. Some locations may also require Plan Members to meet part of the cost.

2.   In addition to the Retirement Contribution Credits and the individual Discretionary Supplementary Credits the Sponsoring Employers pay a risk insurance contribution of 2,5 % of the pensionable salary of each Plan Member.

# VI.    Plan Administration

### Art. 34   Executive Committee and Plan Administrator

1.   The Plan's business is conducted by the Executive Committee and the Plan Administrator.

2.   The Executive Committee is composed of up to 10 members appointed by CSG.

3.   The chairman of the Executive Committee is appointed by CSG.

### Art. 35   Duration of Executive Committee Members' Term of Office

1.   The Term of Office of the members of the Executive Committee is four years; at the end of the four years, the Term of Office is immediately renewable.

2.   If a member of the Executive Committee terminates employment with any Sponsoring Employer or resigns from office during a four year tenure, this person is immediately replaced by a successor, who completes the predecessor's Term of Office.

### Art. 36   Responsibilities of the Executive Committee

1.   The Executive Committee shall implement all measures needed to achieve the Plan's objectives.

2.   The Executive Committee shall review the investment performance of the Plan funds.

17

## CERTIFICATE OF SERVICE

I, Debbie Daiowraj, certify that on May 10, 2007, that I electronically filed MEMORANDUM OF LAW IN OPPOSITION TO WINTERTHUR'S MOTION TO DISMISS, with the Clerk of the Court using the CM/ECF system, which sends notification of such filing to counsel for plaintiff and defendant.

Dated: New York, New York
      May 10, 2007

                                     Debbie Daiowraj

Sworn to before me this 10th
day of May, 2007

         Notary Public

LUZ STELLA HURTADO
Notary Public, State of New York
No. 01HU6146965
Qualified in Queens County
Commission Expires 05/30/2010