Evan J. Spelfogel (ES-9087)
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York  10177
Tel: 212-351-4500
Fax: 212-661-0989
ATTORNEYS FOR DEFENDANT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**ORIGINAL FILED BY ECF**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RAJIV GARG,

                            Plaintiff,

             – against –

WINTERTHUR,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. 0510 (ADS) (AKT)

**AFFIRMATION OF**
**GRETA RAVITSKY**

       GRETA RAVITSKY, an attorney admitted to practice law before the courts of the State of New York, and in the Eastern District of New York, hereby affirms the following under the penalty of perjury:

       1.      I am an attorney employed by the law firm of Epstein Becker & Green, P.C., attorneys for defendant Winterthur Life (improperly named in the Verified Complaint as "Winterthur"). I am familiar with the facts and circumstances of this action, and submit this affirmation upon my review of relevant documents and information.

       2.      Plaintiff does not have a direct contractual relationship with the Pension Fund International ("PFI Plan"). See copy of Deed of Adherence for the PFI Plan attached as Exhibit 1.

       3.      Pursuant to the Rules and Regulations of the PFI Plan, the plan's sponsor, Credit Suisse First Boston ("CSFB"), makes 100% of the contributions to the plan on behalf of its

employees based in the United States.  See copy of excerpt from Pension Fund International of Credit Suisse Group Rules and Regulations, at Art. 33 subsection 1, attached as Exhibit 2.

4.      Plaintiff contacted Winterthur Life and submitted information to Winterthur Life employees in Switzerland concerning the payment of a termination benefit.  See copy of letter to plaintiff dated October 8, 2001 from employees at Winterthur Life, attached as Exhibit 3.

5.      Plaintiff received a termination benefit that was paid by the PFI Plan in Guernsey and wired to his bank account in London, England.   See copies of documents entitled "Winterthur Columna Global Benefits Payment Instructions" and "Debit Advice", attached as Exhibit 4.

6.      Statements concerning plaintiff's PFI Plan benefits that plaintiff received were generated by the Plan Administrator Winterthur Life on behalf of the PFI Plan in Guernsey.  See copy of letter to plaintiff dated January 10, 2002 from the PFI Plan, attached as Exhibit 5.

Dated: New York, New York
        June 11, 2007


                                s/Greta Ravitsky
                                Greta Ravitsky

# EXHIBIT 1

**THIS DEED OF ADHERENCE** made the first day of January One thousand nine hundred and ninety eight.

<u>BETWEEN</u> :

(1)    **CREDIT SUISSE GROUP** whose registered office is situate at Paradeplatz 8, P.O.Box 1, CH-8070 Zurich, Switzerland (hereinafter referred to as "the Participating Employer") of the first part and

(2)    **CREDIT SUISSE TRUST LIMITED** of PO Box 122   Helvetia Court   South Esplanade   St Peter Port   Guernsey GY1 4EE as Trustee of the Winterthur-Columna Global Benefits (hereinafter referred to as "the Trustees") of the second part and

(3)    **WINTERTHUR-COLUMNA** whose registered office is situate at Gertrudstrasse 15, PO Box 300, CH-8401 Winterthur, Switzerland (hereinafter referred to as "WC") of the third part

**W H E R E A S** :

A/    This Deed is supplemental to the Trust Deed more particularly defined in Clause 1.1.15 below and executed by the Trustees whereby an international pension plan was established for Participating Employers.

B/    The Participating Employer is desirous of participating in a defined contributions Pension Plan and/or certain other benefits arrangements administered by the Trustees in accordance with the Rules and Regulations of the Pension Plan and on the terms and conditions more particularly set out below.

DOA-CS.DOC/08.01.98

C-500

C/    The Pension Plan shall be administered by the Trustees who shall delegate the responsibility for making the insurance arrangements provided by the Plan to WC.

**NOW THIS DEED WITNESSETH** as follows:

## 1    INTERPRETATION

1.1    In this instrument wherever the context permits the following words shall have the following meanings and words and expressions cognate with them shall be construed accordingly.

1.1.1    "Court" means any court of competent jurisdiction

1.1.2    "Deed" means any agreement in writing signed by the party or parties executing it and shall not be invalid by reason only of a defect in the formal validity of its execution providing the party executing it had ostensible authority in relation to its execution.

1.1.3    "Deed of Adherence" means an instrument whereby the Participating Employer agrees to adhere to the terms of the Trust Deed and the Rules of the pension plan which he has adopted for his employees.

1.1.4    "Fiscal imposition" means any tax levy or other impost of any description that may be payable in respect of any payment made to a Member of the Pension Plan.

1.1.5   "Insurance Benefits", where applicable, means risk insurance arrangements described in and regulated by the Rules and Regulations.

1.1.6   "Member" means an employee who is eligible to participate in a pension plan of a Participating Employer.

1.1.7   "Participating Employer" means the employer participating in a Pension Plan administered by the Trustee in accordance with the Rules of that plan.

1.1.8   "Pension Plan" means the Trust Deed, Rules and all the other documents more particularly comprising the Deed of Adherence relating to the Participating Employer and identified in Clause 1.2.7.

1.1.9   "Person" means any individual or any body of persons corporate or unincorporated.

1.1.10  "Protector" means the Protector for the time being hereof.

1.1.11  "The Proper Law of this Deed" means the law to the exclusive jurisdiction of which the rights of all the parties thereto and the construction and effect of each and every provision of the Deed shall be subject and by which such rights construction and effect shall be construed and regulated.

1.1.12  "Rules and Regulations" means the rules of any pension plan administered by the Trustees on behalf of WC.

1.1.13  "Rules Booklet" means a booklet containing the Rules and Regulations.

1.1.14 "The Trustees" means the trustee or trustees for the time being hereof.

1.1.15 "Trust Deed" means the Declaration of Trust executed by the Trustees on the 9th day of July 1996 in respect of a Trust known as the Winterthur-Columna Global Benefits.

1.1.16 The terms "Executive Committee" and "Investment Committee" mean the role and duties set out in Articles 35 to 39 inclusive and Article 40 of the Rules.

1.1.17 "The Plan Administrator" shall be WC on such terms as may be agreed with the Executive Committee except in so far as the terms agreed by WC with the Executive Committe are not in conflict with either Article 39 or 40 of the Rules.

1.2    In the interpretation and construction of each and every provision:

1.2.1  Words importing the masculine feminine or neuter gender shall include the other gender or genders.

1.2.2  Words in the singular shall include the plural and words in the plural shall include the singular.

1.2.3  The headings and sub-headings to this Deed are inserted only for reference to the provisions hereof and shall not affect the construction of such provision.

1.2.4  Any references, express or implied, to statutes, laws or statutory provisions whatsoever shall be construed as references to those statutes laws or provisions as respectively amended or re-enacted or as their application is modified from time to

time by other provisions (whether before or after the date hereof) and shall include any laws statutes or provisions of which they are re-enactments (whether with or without modification) and any orders regulations instruments or other subordinate legislation under the relevant statute law or statutory provision.   References to sections of consolidating legislation shall wherever necessary or appropriate in the context be construed as including references to sections of the previous legislation from which the consolidating legislation has been prepared.

1.2.5   The recitals to this Deed shall be deemed to form part of this Deed.

1.2.6   References to writing shall include any methods of reproducing words in a legible and non-transitory form.

1.2.7   The undermentioned documents attached to this Deed and forming the First Schedule shall be regarded as part of this Deed without any limitation:

1.2.7.1 the Investment Policy;

1.2.7.2 the Summary of the Trust Deed;  and

1.2.7.3 the Rules Booklet.

2      PROPER LAW

2.1    The Proper Law of this Deed shall be the Law of the Island of Guernsey.

2.2    If by virtue of the Proper Law for the time being any provision hereof may not take effect according to its tenor such provision shall have effect to the fullest extent permitted for the time being by such Proper Law.

3    **OBLIGATIONS AND DUTIES OF THE TRUSTEES**

3.1    The Trustees hereby agree to administer the pension and benefits plan of the Company in accordance with the attached Rules and Regulations and other documents more particularly identified in Clause 1.2.7 above and in accordance with the Laws of Guernsey which shall prevail in the event of any conflict.

3.2    The Trustee agrees to administer the plan separately from any other plan it may operate and keep the records of the plan in such a manner that the contributions made by the Participating Employer can be readily identified and without prejudice to the foregoing the level of contributions that have been made in respect of each participant in the Pension Plan and that any amounts due under the plan shall be payable only from the assets of that Pension Plan and from no other Pension Plan operated on behalf of another Participating Employer and for the avoidance of all or any doubt no other Participating Employer shall have any claim on the assets of the plan.

3.3    The contributions made by a Participating Employer shall, if applicable, be attributed to two funds which shall be known as an allocated fund and an unallocated fund.

3.3.1    The contributions made by the Participating Employer to the allocated fund shall be in respect of the Pension Plan and as such be held by the Trustees for the exclusive benefit of the Members of the Pension Plan to the exclusion of anyone else and in particular the Participating Employer or any Liquidator, Receiver, Administrator or by

whatever name known who is involved in any scheme of arrangement for the reconstruction, amalgamation, liquidation or otherwise including Chapter 11 arrangements affecting the Principal Employer.

3.3.2  Any contributions made by the Participating Employer in respect of any future liability attributable to the labour laws of whatever description in the jurisdiction concerned or any discretionary contributions to meet any future liability shall be placed in an account to be known as the unallocated account. All deposits in this account including investment income thereto shall belong to the Participating Employer and shall not be released to any Member without the prior written consent of the Participating Employer.

3.3.3  In the event that any challenge is made by any Liquidator, Receiver, Administrator or by whatever name known in any jurisdiction to the monies held in the allocated fund for the employees of the Participating Employer the Trustees shall be obliged to resist any claim made by the said Liquidator, Receiver, Administrator or by whatever name known and be entitled to claim from the allocated fund all legal costs incurred on a full indemnity basis in respect of resisting such a claim. The trustee shall be obliged to inform the Protector on receipt of such a claim and all decisions concerning the claim must be made with the express approval in writing of the Protector. Providing the consent of the Protector is obtained the Trustee shall not be required as a result of any decision by a court of competent jurisdiction in order to be entitled to claim any costs incurred in this regard on a full indemnity basis to obtain the permission of the court before commencing, defending or otherwise participating in the litigation.

3.4  In accordance with the Rules and Regulations of the Pension Plan a portion of the funds contributed by the Participating Employer may be invested at the Member's request in various insurance policies to provide insurance cover for Members of the

Pension Plan details of which are set out in the Rules Booklet and that WC will advise the Trustees in relation thereto.

3.4.1  For the purposes of administering, where applicable, the insurance arrangements any notification by WC will take effect as if made by the Trustees and any communication in connection therewith will be to the Participating Employer at his last known address.

3.5  The Member shall be charged in accordance with the fee structure more particularly identified under Clause 10.

3.5.1  All charges relating to the unallocated portion of the contributions by the Participating Employer and more particularly referred to in Clauses 3.3 and 3.3.2 are to be borne by the Participating Employer.

## 4    OBLIGATIONS AND DUTIES OF WC

4.1  WC will supply to each Member of the Pension Plan on an annual basis a certificate which shall set out the following details in respect of the Member:

a)    the total contributions made by the Participating Employer and Member;

b)    the total cumulative contributions made by the Participating Employer and Member;

c)    the total assets attributable to the contributions made by the Participating Employer for the Member and those of the Member which shall for the purposes of distinguishing between this heading and (b) above include the accumulated income in respect of both categories of contribution.

d)    the Insurance Benefits

4.2     The information set out in 4.1 shall be supplied to each Member within four months from the annual anniversary of the commencement of the Pension Plan.

4.3     The currency of the Pension Plan shall be denominated in US Dollar.

5       INVESTMENT

5.1     An Investment Committee shall be required to indicate to the Trustees by means of an investment policy declaration the underlying risk profile of the portfolio of assets the contributions are to be invested in and for this purpose the Investment Committee shall be required to complete the investment policy form a copy of which is attached to this Deed pursuant to the terms of Clause 1.2.7.

5.2     These declarations may be completed in conjunction with the Trustees in accordance with the provisions of the Trust Deed but the Trustees and WC shall not be responsible for any loss howsoever arising and any such loss shall be borne exclusively by the employees of the Pension Plan save in the case of fraud gross negligence or wilful default.

5.3     Notwithstanding Clause 5.2 it is hereby acknowledged by the Participating Employer as evidenced by the signing of this Deed that the Investment Committee makes all investments on behalf of the Pension Plan at the risk of the Pension Plan save as provided by Clause 5.2 whether the investments are made by way of original subscription, switching individual portfolio investments or otherwise.

5.4     WC as Plan Administrator shall be responsible for all amounts paid from the Pension Plan but the Member shall be responsible for all fiscal impositions levied or payable on any amount or amounts paid from the Pension Plan.

5.4.1    The Trustees, WC and the Participating Employer shall not be responsible for any mandatory tax or fiscal imposition deducted from any payment made by a paying agent in the country where the Member is resident.

5.4.2    The Member shall have the right to require the payment of any sums due to him to be paid to a bank account in any jurisdiction nominated by him and in the absence of any instruction from the Member payment or payments shall be held by the Trustees on bare trust in a bank account in the name of the Trustees to the order of the Member.

## 6     OBLIGATIONS OF THE PARTICIPATING EMPLOYER

6.1     The Participating Employer agrees to submit to the terms of this Deed together with the other documents identified in Clause 1.2.7 above.

6.2     The Participating Employer agrees to provide the Trustees with all the information needed to administer the plan within fourteen days of the end of each calendar month, including but not limited to notification of all changes in personnel whether by leaving employment, commencing employment, death, changes in name, changes in earnings and any other matter which the Trustees consider necessary to ensure the efficient working of the administrative arrangements of the Trust and the Trustees shall not be responsible for any loss occasioned by any breach of this condition by the Participating Employer.

6.3     The Participating Employer by signing this Deed acknowledges that it has not received any tax or investment advice from any party to this Deed.

6.4     The Participating Employer warrants that there are no restrictions of any kind whether legal or otherwise preventing the Participating Employer from entering into the commitments set out in this Deed of Adherence and that all the internal procedures of the Participating Employer in relation to entering into this Deed have been complied with and that the person signing this Deed is a duly authorised signatory on behalf of the Participating Employer and as such able to bind the Participating Employer.

## 7     DURATION AND TERMINATION OF THE AGREEMENT

7.1     This Deed shall be effective for 25 months from December 1, 1997 and unless six months notice is given prior to the date for termination the agreement contained in this Deed shall be automatically renewed on the same terms and conditions for a further 24 months from the original termination date.

7.2     Notice of termination must be given in writing to the Trustees at the registered office of the Trustee and any cost incurred in connection with the termination shall be borne by the Participating Employer and shall be deducted from the assets transferred at the Participating Employer's direction as a result of the termination.

## 8     DISPUTES

In the event of a dispute involving the Trust or Trustees irrespective of whether WC is acting either as an agent or otherwise of the latter WC shall be authorised to refuse any unjustified claims made on the Trust or Trustees on its own initiative without first referring the matter to

11

the Trustees but shall report any such disputes to the Trustees on a quarterly basis and thereafter act on the basis of a jointly determined course of action in relation to such disputes. Insofar as it may become necessary to file any motions or applications in the name of the Trust whether as a result of the quarterly consultation process or otherwise WC undertakes to make all such applications on a timeous basis.

## 9    ARBITRATION

In the event of a dispute difference or question arising in relation to this Deed including all the attachments forming part hereof the dispute difference or question shall be referred to a sole arbitrator who shall be appointed by the parties in dispute and failing agreement by the parties or in default thereof by the President of the Institute of Actuaries in England for the time being whose decision on this question shall be binding on the parties.  The decision of the sole arbitrator whether appointed by agreement or otherwise shall be binding on the parties in dispute. The arbitration process shall be governed by the Arbitration (Guernsey) 1982 Law or any statutory modification thereof.

## 10    FEES

An administration fee of US$ 150.00 per scheme member is due per any one year and becomes payable at the beginning of each annual period.

## 11    DISCLOSURE

The Trustees shall not be obligated to disclose any of the terms of the Trust Deed to any of the parties to this Deed.

12

IN WITNESS whereof this Deed has been executed and delivered the day and year first above written by or on behalf of the parties stated at the beginning of this Instrument.

SIGNED for and on behalf of )
CREDIT SUISSE TRUST )
LIMITED in the presence of: )

DIRECTOR

AUTHORISED SIGNATORY

Date:   26ᵗʰ   January 1998.

SIGNED for and on behalf of )
WINTERTHUR-COLUMNA )
in the presence of: )

Date: January 12, 1558

SIGNED for and on behalf of )
CREDIT SUISSE GROUP )
in the presence of: )

Date:   January 14, 1998

13

EXHIBIT 2

# PENSION FUND INTERNATIONAL OF CREDIT SUISSE GROUP

## RULES AND REGULATIONS
### valid as from January 1, 2000

## V.   Financing of the Plan

### Art. 33   Contributions

1. The Plan is financed by regular contributions payable by the Sponsoring Employer. Some locations may also require Plan Members to meet part of the cost.

2. In addition to the Retirement Contribution Credits and the individual Discretionary Supplementary Credits the Sponsoring Employers pay a risk insurance contribution of 2,5 % of the pensionable salary of each Plan Member.

## VI.   Plan Administration

### Art. 34   Executive Committee and Plan Administrator

1. The Plan's business is conducted by the Executive Committee and the Plan Administrator.

2. The Executive Committee is composed of up to 10 members appointed by CSG.

3. The chairman of the Executive Committee is appointed by CSG.

### Art. 35   Duration of Executive Committee Members' Term of Office

1. The Term of Office of the members of the Executive Committee is four years; at the end of the four years, the Term of Office is immediately renewable.

2. If a member of the Executive Committee terminates employment with any Sponsoring Employer or resigns from office during a four year tenure, this person is immediately replaced by a successor, who completes the predecessor's Term of Office.

### Art. 36   Responsibilities of the Executive Committee

1. The Executive Committee shall implement all measures needed to achieve the Plan's objectives.

2. The Executive Committee shall review the investment performance of the Plan funds.

17

EXHIBIT 3

GLOBAL BENEFITS
On behalf of
Pension Fund International
of Credit Suisse Group

For questions contact:
**Irene Spalinger**
Tel +41 52 261 27 04
Fax +41 52 212 12 01

Confidential

Mr Rajiv Garg
14 Woodhill Lane
Upper Brookville
New York 11545
USA

Winterthur, 08.10.01 /BIT

**"Pension Fund International of Credit Suisse Group"**

Dear Mr Garg

Your employer has informed us of the termination of your employment effective 01.07.2000.

We kindly ask you to complete, sign and return the enclosed form in respect of the transfer of your vested benefits from the Pension Fund International of CS Group.

We wish to inform you that you are accountable for all tax reporting to the appropriate authorities and for payment of any tax liability that may be incurred as a result of a cash distribution of your vested benefits from the Pension Fund International. Should you opt for a cash payment, we also require you to sign and return the enclosed form "Tax Liability".

Please sign and return the form(s) to:

Irene Spalinger
Winterthur Life
SN 215
PO Box 300
8401 Winterthur
Switzerland
E-mail: irene.spalinger@winterthur.ch

On behalf of "Pension Fund International of Credit Suisse Group"

Irene Spalinger
Winterthur Life

Isabella Burigo
Winterthur Life

Encl.

# EXHIBIT 4

# WINTERTHUR COLUMNA GLOBAL BENEFITS
## PAYMENT INSTRUCTIONS

Tel: + 44 (0) 1481 719100
Fax: + 44 (0) 1481 701245

P O Box 122
Helvetia Court, South Esplanade
St Peter Port, Guernsey
Channel Islands  GY1 4EE

Attention _____

Ref     111509                          Date _____

To     The Manager

**Please arrange for the following payment and debit account**

41574

1.   Please telegraphically transfer the sum of          USD 199'768.50

      (in words)     US Dollars One Hundred Ninety Nine Thousand Seven Hundred Sixty Eight
                     50/00

      **Please arrange for payment in USD**

for value     Mr Rajiv Garg, 14 Woodhill Lane, Upper Brookville, New York 11545, USA     to:

bank address     Coutts + Co., 440 Strand, London WC2R 0QS

sort code     18-00-02                    account number     2428660

swift code

sub account name _____     sub account number

Additional narrative to be included     Vested Benefits PFI – Mr Rajiv Garg / Attn. KR Wilkins

For and on behalf of
CREDIT SUISSE TRUST LIMITED
as trustee of the Winterthur Columna Global Benefits

_____          _____
Authorised signatory                Authorised signatory

FOR CREDIT SUISSE TRUST/WINTERTHUR COLUMNA USE ONLY
This instruction prepared by Winterthur Columna as Administrator

_____          _____
Authorised signatory of Winterthur Columna        Signature checked by CREDIT SUISSE TRUST

SUISSE | BANKING

CREDIT SUISSE (GUERNSEY) LIMITED
PO Box 368
St Peter Port Guernsey
Channel Islands GY1 3YJ

Telephone +44 1481 719000
Telefax
Telex +44 1481 724676
Guernsey 4191228

WINTERTHUR COLUMNA
GLOBAL BENEFITS
ATTN: MS BRIGITTA HILTEBRAND
VNDB2, PO BOX 300
CH-8401 WINTERTHUR

Date                    10.01.2002

Account holder          0041574
CSTL TTEE WCGB RE PENSION FUND
INTERNATIONAL 111509/90155

Our ref                 PEXC/8574097/0

## D E B I T   A D V I C E

Transaction date        10.01.2002

We have executed the following payment

to                                      USD              199,768.50

COUTTS AND CO
440 STRAND
LONDON
SC180002

In favour of
2428660
MR RAJIV GARG
14 WOODHILL LANE    UPPER BROOKVILLE
NEW YORK  11545    USA

Details
VESTED BENEFITS PFI - MR RAJIV
GARG/ ATTN KR WILKINS

Plus charges
SWIFT/Telex charges

**Total amount**

We debit your account
G0041574.01.USD
Current Account

USD                  28.81
- - - - - - - - - - - - - - - - - - - - -
**USD             199,797.31**

Value            10.01.2002

CREDIT SUISSE (GUERNSEY) LTD.

Advice without signature

# EXHIBIT 5

Trust governed by Guernsey law

Confidential
Pension Fund International
of Credit Suisse Group
(Deferred Members)

For questions please contact:
Irene Spalinger

Guernsey, 10.01.2002/bit

**Withdrawal as of 31.12.2001**
**Mr Rajiv Garg**

Contract no. 101
Pension Fund International
of Credit Suisse Group

Member ID No.       1010048
Pension Fund International
of Credit Suisse Group

|  | USD |
|---|---|
| **Total assets accrued** | 199,768.50 |
| **Beneficiary's claim:** | |
| Sum of employee contributions | |
| Vested benefits by Beneficiary | 0.00 |
| Share of remaining assets according to the rules | 187,339.67 |
| Accrued Units of Fund 218485 as of 31.12.2001 | 0.00 |
| Total Value of Units sold | 77 |
| Accrued Cash Balance as of 31.12.2001 | 199,242.89 |
|  | 525.61 |
| **Total vested benefits** | 199,768.50 |

We use the resulting amount(s) as follows:

- Transfer of the beneficiary's share amounting to 199,768.50
  to
  Account no.

Sincerely yours,

Winterthur-Columna
Global Benefits

Swiss Office: P.O. Box 300, CH-8401 Winterthur, Tel. no. +41 52 261 27 04 , Fax. no. +41 52 261 50 90